CHARLES P. SENTER v. WISCONSIN LUMBER COMPANY, Appellant.

Division One, March 3, 1914.

1. QUIETING TITLE: No Prima-Facie Title in Plaintiff. The plaintiff cannot call defendant into court by his suit to ascertain and determine the title to land, under old section 650, and have the court declare the alleged claim of defendant invalid, unless he himself have a prima-facie title. If his own title is invalid, it is no concern of his whether or not defendant's claim is invalid.

2. SWAMP LAND: General Judgment Against County: Sale by Sheriff. A sheriff's deed made in 1860, purporting to convey title to swamp lands through a sale under a general judgment

against the county, is void upon its face. Such lands were not subject to sale in that way. They were held by the county in trust for specified purposes, and could not be subjected to the payment of a general county indebtedness by execution sale.

3. ———: ———: ———: **After-Acquired Title.** After-acquired title does not inure to the benefit of a grantee in a sheriff's deed. Such a deed conveys to the grantee only the mere "right, title and interest" of the execution debtor. So that, though it be conceded that subsequent acts of the Legislature gave to the county a title different from the one held by it at the date of the sheriff's deed in a sale of swamp lands under a general judgment for debt against the county made in 1860, that fact would not avail the grantee in said deed anything.

4. ———: ———: ———: **Estoppel in Pais: Levying and Collecting Taxes.** The fact that after the swamp lands were sold by the sheriff under a general judgment against the county for debt, the county, through its officers, for many years, assessed the land for taxes against the grantee in the deed, and collected from him the taxes so assessed and levied, does not avail to render valid the deed void on its face, nor do those things amount to an estoppel *in pais* as a basis for title in such grantee.

Appeal from Dunklin Circuit Court—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED (*with directions*).

*Arthur L. Oliver* and *Victor A. Remy* for appellant; *Edgar A. Bancroft* of counsel.

(1) Respondent's source of title is an inoperative and void sheriff's deed. The burden was on respondent to prove a prima-facie title. Wheeler v. Land Co., 193 Mo. 291. Respondent's source of title is the sheriff's deed of November 15, 1860, purporting to sell these swamp lands under an execution. The nature of the judgment on which the execution was issued does not appear and the presumption is that it was based on an ordinary county indebtedness. State v. Crumb, 157 Mo. 561; Hall v. Klepzig, 99 Mo. 88. The sheriff's deed is absolutely inoperative and void because: (a) At the time of its execution Dunklin county

had no title to the lands described in the deed.    Bay-
less v. Gibbs, 251 Mo. 492.    Therefore, no title passed
under the execution sale.    Tate v. Sanders, 245 Mo.
210.    That Dunklin county later obtained title is im-
material, for an after-acquired title does not inure
to the benefit of a grantee under a sheriff's deed.    Gib-
son v. Chouteau, 39 Mo. 566; Emerson v. Sansome, 41
Cal. 555.    (b)  Even if Dunklin county had title, the
levy and sale are void; these lands being held for a
public purpose cannot be sold under execution.    State
v. Tiedemann, 69 Mo. 307; Hart v. Klein, 98 U. S. 151;
Meriwether v. Garrett, 102 U. S. 501; New Orleans v.
Morris, 105 U. S. 604; New Orleans v. Construction
Co., 140 U. S. 664; Ellis v. Pratt City, 111 Ala. 631.
Swamp lands are held by the counties for public pur-
poses.    Laws 1852-1854, p. 108; Laws 1850-1851, p.
238; Bayless v. Gibbs, 251 Mo. 492; Wheeler v. Land
Co., 193 Mo. 279; Railroad v. Hatton, 102 Mo. 55;
Railroad v. Wayne County, 125 Mo. 357; Sturgeon v.
Hampton, 88 Mo. 213; Hooke v. Chitwood, 127 Mo.
376; Moss v. Kauffman, 131 Mo. 427.    Hence they are
exempt from sale under execution.    State ex rel. v.
County Court, 51 Mo. 85; State v. Crumb, 157 Mo. 561;
Simpson v. Stoddard County, 173 Mo. 445.    (2)  Re-
spondent has acquired no title by laches or estoppel.
Since the sheriff's deed is absolutely void the county
would not be barred by laches.    Cook v. Lasher, 70
Fed. 707.    Nor could such a deed create an estoppel.
MacFarland v. Heim, 127 Mo. 334; Edwards v. Kirk-
wood, 147 Mo. App. 615; McCracken v. San Fran-
cisco, 16 Cal. 624.    Neither respondent nor his gran-
tors ever had possession of the lands.    Mere payment
of taxes does not constitute possession.    Stone v. Per-
kins, 217 Mo. 602; Carter v. Hornbeck, 139 Mo. 245.
The assessment and collection of taxes could not estop
the county.    Hooke v. Chitwood, 127 Mo. 376.    None
of the elements of estoppel as defined in Hequembourg
v. Edwards, 155 Mo. 522, are present here.    But even

were the county estopped, the appellant, a bona-fide purchaser for value and without notice, is not estopped. Thistle v. Buford, 50 Mo. 281; Rutz v. Kehr, 25 N. E. (Ill.) 957. There is no evidence that appellant had actual notice either of the sheriff's deed or of the assessment and collection of taxes by the county. Since the county had no title until long after the execution of the sheriff's deed, appellant is not chargeable with constructive notice of that instrument. Ford v. United Church, 120 Mo. 498, 514. Nor is it charged with constructive notice of the assessment and collection of taxes, for they were not on the land records of the county recorder. R. S. 1909, secs. 2809. 2810; Roussain v. Norton, 53 Minn. 560.

*J. L. Fort* for respondent.

(1) Appellant claims to be an "innocent purchaser." The claim of "innocent purchaser" is in an answer an affirmative defense, and in a petition occupies a similar affirmative attitude, and the party pleading it must "come into a court of equity with absolutely clean hands." And not only must the affirmative claim or affirmative plea contain the elements aforesaid, but those elements must be appropriately amplified; thus: If a purchaser wishes to rest his claim on the fact of being an innocent bona-fide purchaser he must deny notice, though it be not charged; he must deny fully and in the most precise terms every circumstance from which notice could be inferred and inasmuch as the averment or defense of being an "innocent purchaser" is an affirmative allegation or plea, so must the evidence offered in its support be of the like nature; as the allegation must be affirmatively pleaded, so also must it affirmatively be proved; the *onus* lies on the pleader. Young v. Schofield, 132 Mo. 660. No issue of "innocent purchaser" was tendered by the pleadings in this case, and no testimony was

introduced in the trial on that question, and therefore appellant stands on this record as one having notice and knowledge of the title under which respondent claims as well as notice and knowledge of the fact that respondent, and those under whom he claims had paid taxes on these lands, under claim of ownership thereof for twenty-nine years. In this view of the case it makes no difference whether the sheriff's deed to Daniel B. Miller was constructive notice to appellant or not since appellant failed to show that it was an "innocent purchaser," and therefore, stands on this record as a purchaser with notice, and such purchaser cannot complain of the want of constructive notice. (2) There are certain links in the chain of title to overflowed lands in Missouri of which every one purchasing such lands is charged with notice, viz: That the title in the beginning was in the United States; that the title passed by a public act of Congress to the State of Missouri; that it passed by a public act of the General Assembly to the several counties in which the lands were situated; that is to say, although at the date of the sale of the land in question the State still retained the legal title, yet the State had constituted the counties its agents authorized to sell on the terms and in the manner prescribed by law, the patent to be issued by the State pursuant to a sale by the county. The officers entrusted with these sales in the several counties were required by law to keep a record of their acts. All these public laws the purchaser was bound to take notice of and he was bound to know what the books and files in the public offices where these sales were made would show. He was also charged with notice of the fact that the land he was about to purchase was, at the date of the several public acts of the General Assembly, in a certain county and that the records of that county, the books and files in the offices of the several officers charged with the duty of making the sales, would show what, if anything, the county had

done in the way of selling the land. Mosher v. Bacon, 229 Mo. 362. The Act of Congress was a legislative grant and required no formal conveyance to transfer the title to all these swamp lands to the several states. It was, as has been repeatedly ruled, a grant *in praesenti*, the selection ordered to be made by the Secretary of the Interior being merely for the purpose of subsequently identifying the land, and the patent when issued relating back to the passage of the act. After the title to these lands had thus been vested in the State of Missouri the State, through its General Assembly, by an act approved February 23rd, 1853, donated its swamp lands to Dunklin county upon the terms and provisions of the Act of 1851 which granted all of such lands to the counties in which they were situated. Subsequently, by an act of the Legislature approved November 4th, 1857, all the lands in the State selected under and by virtue of said Act of Congress was declared to vest in full title and belong to the counties in which they were situated. Simpson v. Stoddard Co., 173 Mo. 443; Laws 1857, Adj., p. 38. This act includes by its general terms, Dunklin county, and the Acts of 1868 and 1869 simply conform to the county the title which had been already granted to it by the Act of 1857 above. Simpson v. Stoddard County, 173 Mo. 445. (3) It is a general rule of law that notice to an agent during the existence of the agency, and in reference to business coming within the scope of the agent's authority, is notice to the principal. Hayward v. Company, 52 Mo. 181; Meier v. Bloom, 80 Mo. 179; Dunham v. Hahn, 127 Mo. 439; Bank v. Lovitt, 114 Mo. 519; Traber v. Hicks, 131 Mo. 180; Smith v. Boyd, 162 Mo. 157. The agents of the county and State assessing, levying and collecting taxes on the lands in suit must have represented, and must have been the agents of the county and state, otherwise they were nobody's agents. The eye of equity cannot see the county, or the State, in the transaction of assessing,

levying and collecting these taxes without seeing these agents. Not only have the State and county officers assessed, levied and collected taxes on the lands in suit, but the State Board of Education has had the authority, and has been charged with the duty of recovering such portions of the swamp lands of the different counties of the State as have been diverted from their proper channels, at least, since the year 1870, and has had the authority during all that time, in each Congressional district of the State, to employ an attorney to assist it in carrying out and performing the duty imposed upon it by law. Laws 1870, p. 159; Laws 1871, p. 79; R. S. 1879, secs. 7091-93; R. S. 1889, secs. 8040-42; R. S. 1899, secs. 9815-17; R. S. 1909, secs. 10975-77; Phillips v. Butler County, 187 Mo. 698. If the lands in suit were diverted from their legitimate use, by the sale thereof to Daniel B. Miller in 1860, surely it was the duty of the State Board of Education since the year 1871, to prosecute a suit to recover the land, and its failure to do so since that time ought to estop it from claiming the lands in suit against respondent, or his predecessors in title. (4) The purpose of all estoppels is to prevent duplicity and inconsistency. Estoppel concludes the truth in order to prevent fraud and falsehood. The reason which governs estoppels is that after a man has by his own deed or act *in pais* admitted a fact to be true he shall not be permitted to contradict it. Estoppels preclude the assertion of facts not law. Evidence of the falsity of the fact is excluded because the nonexistence of the fact is immaterial. Whether the fact exists or not, the rights of the parties are the same in law. Mutual v. Corey, 135 N. Y. 326; Coogler v. Rogers, 25 Fla. 853; Davis v. Collier, 13 Ga. 485; Gavin v. Graydon, 41 Ind. 559; Reid v. Benge, 112 Ky. 810; Gibson v. Gibson, 15 Mass. 106; Moore v. Willis, 9 N. C. 555; South v. Deaton, 113 Ky. 312; Davis v. O'Farrall, 4 Greene (Io.), 358; Demarest v. Hopper, 22 N. J. L.

599; Bush v. Critchfield, 5 Ohio, 109. Estoppel is so called because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth. Coke Litt., 352a; Edmonson v. Montague, 14 Ala. 370; Chesser v. DePrater, 20 Fla. 691; McCabe v. Raney, 32 Ind. 309; Ridgeway v. Morrison, 28 Ind. 201; Martin v. Company, 83 Me. 100; Haynes v. Stevens, 11 N. H. 28; Frost v. Company, 49 Am. Dec. 234; Armfield v. Moore, 44 N. C. 157; Ennel v. Levy, 46 Ohio St. 255; Water's Appeal, 78 Am. Dec. 354; Stebbins v. Bruce, 80 Va. 389; 16 Cyc. 749. A disclaimer of title to property seized or sold under judicial process estops the party from subsequently asserting title thereto. Barnhart v. Fulkerth, 90 Cal. 157; Kenner v. Mackey, 85 Ill. 96; Lick v. Munro, 8 Idaho, 510; Curyea v. Berry, 84 Ill. 600; Mateer v. Green, 31 Ill. App. 467; Sebright v. Moore, 33 Mich. 92. It is well settled that the doctrine of laches and estoppel applies to a county or other municipal corporation as well as to individuals. Dillon on Municipal Corporations, sec. 548; Dunklin County v. Chouteau, 120 Mo. 594; State v. West, 58 Mo. 229; County v. Post, 93 U. S. 502; County v. Company, 93 U. S. 124; Huff v. Buchanan, 27 Fed. 328; Murphy v. Packer, 152 U. S. 398; Boone v. Company, 139 U. S. 684; Railroad v. Columbia, 132 U. S. 1; Sanders v. Devereaux, 60 Fed. 311; Am. Stave Co. v. County, 93 Fed. 301; Rummel v. County, 93 Fed. 304; 16 Cyc. 749, 757-8; Palmer v. Jones, 188 Mo. 163. Municipal corporations, when acting in their proprietary as contradistinguished from their governmental capacity, are subject to estoppel *in pais* to the same extent as private corporations. Herman on Estoppel, sec. 1222, p. 1363; 1 Dillon, Mun. Corp., sec. 237; Chicago v. Joliet, 79 Ill. 39; Martel v. St. Louis, 94 Ill. 69; Gregston v. Chicago, 145 Ill. 464; State v. Company, 32 L. R. A. 391; Cronin v. New York, 79 N. Y. 511; Knight v. Company, 70 Mo. 237; Railroad v. Tridelphia, 4 L. R. A. (N. S.) 321; Railroad v. County,

36 Mo. 294; Union Depot v. St. Louis, 76 Mo. 393; Louisville v. Company, 224 U. S. 649; State v. Company, 246 Mo. 648.

GRAVES, J.—Action under old section 650 to determine title to certain lands in Dunklin county. The petition is of the very shortest form under such section. The only clause in the petition outside of the ordinary averments that plaintiff owns the land and that defendant claims some title or interest therein, is the following clause:

"That said lands are swamp and not susceptible of cultivation, but plaintiff has been in possession thereof, paying taxes on the same, and exercising over them all the acts of ownership and possession of which the said lands are susceptible."

The answer admits the corporate existence of defendant and that it is empowered to transact business in the State, and further admits that it does claim an interest in the lands in suit, and avers that interest to be a fee simple interest in all of such lands. The answer also denies that plaintiff has any interest therein, and prays that defendant be dismissed with its costs. Defendant's answer is a little out of the usual in that it does not pray that the court adjudicate and determine title, a prayer usually found in answers filed in suits under this section of the old statute. Reply was a general denial.

Upon the issues thus made the trial court found for the plaintiff, and adjudged that the title to all of such lands was in the plaintiff. From this judgment the defendant has appealed.

It is conceded that the plaintiff is not entitled to a judgment for all the lands given him by the decree nisi, but with the view we take of the law of the case there is no necessity to go into the details of this question. It will suffice to say that both parties to this suit claim through Dunklin county as a common source of title, the plaintiff through a sheriff's deed,

and the defendant through some three or four patents. Plaintiff begins to deraign his title by sheriff's deed made in 1860 and acknowledged in 1867. This deed, among other things, recites:

"Whereas, on the 16th day of May in the year of our Lord 1860, a judgment was rendered in the circuit court of the county of Dunklin, in favor of Daniel B. Miller, against Dunklin county, for the sum of fifteen hundred and eighty-one dollars and ninety-one cents for debt, upon which judgment an execution issued from the clerk's office of said court, in favor of said Daniel B. Miller against the said Dunklin county, dated the 18th day of October, 1860, directed to the sheriff of the county of Dunklin, and the same was to me delivered on the 20th day of October, 1860, by virtue of which said execution, I, the said sheriff did on the 20th day of October, 1860, levy upon and seize all the right, title, interest and estate of said Dunklin county of, in and to the following described real estate situated in my said county, to wit:"

After describing a large quantity of land it then recites that all such land was sold to Daniel B. Miller on the 12th day of November, 1860, for the sum of $522.96, and then thus winds up:

"In Witness Whereof, I, Leander J. Taylor, Sheriff of the county of Dunklin have hereto set my hand, and affixed my seal this the fifteenth day of November, 1860.

"Leander J. Taylor,          (Seal)
Sheriff of Dunklin County, Mo."

This deed has the following acknowledgment:

"State of Missouri, ⎱ ss.
County of Dunklin, ⎰

"Be it Remembered, that, on this 7th day of September, 1867, personally appeared in open court, Leander J. Taylor, whose name appears to the foregoing instrument of writing as a party thereto, and who was at the date of said deed sheriff of Dunklin county,

Missouri, and he acknowledges the same to be his voluntary act and deed as such sheriff for the uses and purposes therein mentioned and expressed.

"Given under my hand and seal of the circuit court at office in Kennett, this 7th day of September, 1867.

"Leonard T. Bragg,

"By Wm. G. Bragg,                              Clerk.
Deputy."

It was filed for record on the same day. All of plaintiff's paper title, if any he has, comes through this deed. He offered a number of mesne conveyances, which we need not detail. In addition to this so-claimed paper title the record, so far as plaintiff's title is concerned, then shows the following:

"The plaintiff then offered in evidence certain tax receipts of the collector of Dunklin county purporting to show that:

"Respondent and his grantors paid the said, county and special taxes on the fractional southwest quarter of section nine, township sixteen, range nine, for 1879 to 1886 inclusive, 1892, and 1894 to 1909 inclusive.

"Respondent and his grantors paid state and county taxes on the fractional southeast quarter of section nine, township sixteen, range nine, for 1893.

"Respondent and his grantors paid state, county and special taxes on the northwest quarter of section eleven, township sixteen, range nine, for 1880, 1883 to 1886 inclusive, and 1892 to 1909 inclusive.

"Respondent and his grantors paid taxes on the west half of section thirty, township seventeen, range ten, for 1879, 1882 to 1886 inclusive, and 1892 to 1909 inclusive.

"Respondent and his grantor paid taxes on the fractional south half of section twenty-eight, township eighteen, range ten, for 1880, 1882 to 1886 inclusive, and 1892 to 1909 inclusive.

"To the introduction of said tax receipts the defendant objected on the ground that they were incompetent, irrelevant and immaterial; and that the receipt of taxes by the officers of Dunklin county could not estop the county. The court reserved its ruling.

"The plaintiff offered in evidence tax records of Dunklin county, Missouri, to show that the lands were assessed to R. C. Allen in 1879, 1880, 1881, 1882, 1883, 1884 and 1885, and also to show that the lands were assessed to C. R. Allen during the years for which tax receipts have not been offered and that taxes were paid by R. C. Allen until the year 1889, when he died.

"Plaintiff also offered said tax records to show that taxes were paid on those lands by the administrator of R. C. Allen and by the grantees of Wm. A. Allen and T. C. Allen, for 1889, 1890 and 1891.

"The defendant objected to the foregoing on the ground that no foundation had been laid by showing that the records were in existence.

"The Court: Subject to the objection. What is next? The plaintiff then rested."

This suit was brought in 1909, March 9th, and we will not go into defendant's answer at this time, further than to state, upon the question of taxes, that the record shows that it had also paid taxes upon these lands for five or six years prior to the date of the suit. For the present this sufficiently outlines the case.

I. Of first importance in this case is the validity of plaintiff's paper title. He must make a prima-facie title before he can call the defendant into court, and have the court declare the alleged claim of the defendant invalid. In Wheeler v. Reynolds Land Co., 193 Mo. l. c. 291, VALLIANT, J., has well said:

General
Judgment
Against
County:
Sale of
Swamp
Lands.

"No one has a right to require another to come into court and show his title who can not himself show

at least prima-facie title; and no plaintiff is entitled to a decree declaring the claim of another invalid until he has shown that he himself has a better claim; in equity, as at law, if one recovers at all it must be on the strength of his own title.    Therefore, when the plaintiff calls this defendant into court to answer and show what title it has, he is not entitled to a decree declaring that the defendant's claim of title is invalid until he first shows prima-facie a valid title in himself, even though the defendant offers no proof of his own title.    If therefore the plaintiff's proof goes no farther than to show that the defendant's title is invalid. the plaintiff is not entitled to a decree.    If the plaintiff has no valid title, it is no concern of his to know whether or not the defendant's claim is valid."

It is contended by the defendant that the sheriff's deed to Miller was and is void upon its face.    In other words, that it purports to convey title to swamp land through a sale under a general judgment against the county, and that such lands are not and were not subject to sale in that way.    This contention we think well taken.    Swamp lands could not be sold under a judgment of the kind and character indicated by the sheriff's deed in this case.    These swamp lands were held by the counties in trust for specified purposes, and were not such as could be subjected to the payment of the general county indebtedness by execution sale.    When we say the lands were held in trust by the counties, we do not mean that there was a trust which ran with the land and affected the title thereto, if sold in an attempted exercise of the power of sale given the county, but we mean that the funds obtained from such a sale were impressed with a trust as indicated by the purpose expressed in the act transferring the title from the Federal Government to the State. This is the doctrine of Simpson v. Stoddard County, 173 Mo. 421.    It may be urged that the doctrine of the Simpson case was thwarted in Bayless v. Gibbs,

251 Mo. 492, and in the opinion in that case there are some strictures upon the Simpson case, and in fact the reasoning in the Bayless case follows the line of thought and authorities in the dissenting opinion of the Simpson case, but it will be observed that a majority of this division did not concur in the reasoning of the opinion in the Bayless case. Further the Simpson case is one thoroughly threshed out by the Court in Banc, and when it is overruled the opinion so doing should come from that court, and not from one of our divisions. This much, because the Bayless case in its fullness is urged here. Personally, I think the law well declared in the Simpson case, upon all the vital questions therein contained, and I concurred in the Bayless case on the sole ground that the invalidity of the patent was apparent from the face thereof, a doctrine recognized in the Simpson case. [173 Mo. l. c. 458-9.]

But we need not go to either of these cases for authority in the case at bar upon the question now before us. That question is, can land, held by the county, to be sold by the county and the proceeds of the sale applied to a given specific purpose, be sold under execution upon a general judgment against the county? To this question we answer no, and if the writing purporting to pass the title has impressed upon its face the evidence of that kind of a sale, then such deed or writing is void and absolutely worthless as a muniment of title. This court held such an execution sale and deed thereunder void, in the early case of State ex rel. Robbins v. County Court, 51 Mo. l. c. 85, whereat Judge BLISS said:

"Are, then, the swamp lands within the several counties subject to sale upon execution against the counties? The affirmative of this question is urged by counsel for the original respondents, for the reason that by the act of March 10, 1869 (Laws 1869, p. 66), a conveyance to the several counties of all the title

and interest of the State in and to the swamp and overflowed lands was provided for. But this act does not specify the use for which the counties shall hold these lands, nor repeal any provision theretofore creating a use. It is perfectly consistent with any obligation that may have been or may be imposed upon the counties in regard to the disposition of the proceeds of the sale of these lands. It is true, if no disposition is provided for, they might belong to the general revenue and be used for any lawful purpose; and in that case they might or might not be directly liable to seizure for general debts of the county. Of this it is not necessary for us to speak, and for the reason that before the passage of the above mentioned act a specific use had been designated to which their proceeds should be devoted. The legislative intention in this matter is clear and unequivocal. The above act is not the one upon which the counties rely for title; it only specifies the mode of conveying the same. But the previous act of March 27, 1868 (Laws 1868, p. 68, sec. 1), expressly donates the swamp lands 'to the counties in which they may be respectively situated,' and says that they 'shall be the absolute property of such counties for the purpose hereinafter designated.' This purpose is designated in section 8, which provides that the 'net proceeds of the sales of all such lands, after defraying the expenses of draining, reclaiming, surveying and selling the same, as herein provided, shall be paid into the county treasury and become a part of the public school fund of the county.' The same use had been before established as to most of the counties by the act of March 3, 1851, page 238; so that the several counties, instead of holding these lands for general purposes, have received them from the State in trust, with power of disposition, and hold them for the use of the public schools. So, then, they must be held as declared by the statute, and entirely

exempt from any liability for ordinary county indebtedness.''

It should be remembered that the execution sale in this case was in 1860, long prior to the Act of 1869. We are not saying that this would make a difference, but such fact obviates some of the discussion by Judge BLISS *in his case.* This opinion in 51 Mo. is cited with approval in Simpson's case, 173 Mo. 1. c. 447, and its doctrine likewise recognized in State ex rel. v. Crumb, 157 Mo. 1. c. 561. So upon this question the divers members of this court seem to have agreed, however much there may have been disagreements upon other questions. These lands were improperly sold under the execution in favor of Miller, and the deed to him was void upon its face.

II. And if we were to grant that acts of the Legislature after this sale in 1860 had given to the county **Defective Title: Cured by Later Statute.** a title different from the one held at the date of the sale, yet this would not avail the plaintiff. Title acquired afterward will not inure to the benefit of a grantee in a sheriff's deed. [Gibson v. Chouteau, 39 Mo. 1. c. 566.] Such a deed only conveys to the grantee the mere ''right, title and interest'' of the execution debtor. No covenants of seizure or possession are found in such deeds. After-acquired titles do not pass by such instruments. So that it appears that the very basis of plaintiff's paper title falls from under him, and upon that theory of the case he was not entitled to the decree granted to him.

III. The doctrine of estoppel *in pais* is next invoked as the basis of plaintiff's title. These lands are and were wild lands. We borrow from **Estoppel In Pais.** the brief of plaintiff's able counsel a statement of the facts relied upon as an estoppel *in pais* as between plaintiff and Dunklin county. Counsel says:

"In this case the evidence shows without contradiction that Dunklin county was indebted to Daniel B. Miller in the sum of $1581.91, and that said Miller and those claiming under him down to and including respondent have paid the taxes on the lands in suit for the years 1880, 1882, 1883, 1884, 1885, 1886, 1892, 1893, 1894, 1895, 1896, 1897, 1898, 1899, 1900, 1901, 1902, 1903, 1904, 1905, 1906, 1907, 1908 and 1909, a period of twenty-nine years. For these lands, worth not to exceed $1.25 per acre in the year 1860, Dunklin county has received $1581.91, and the county and the State has received taxes thereon for twenty-nine years. The question is, shall the county be permitted to retain these lands, or to assert title to them as against respondent, and also retain the taxes assessed, levied and collected upon them for twenty-nine years and refuse to pay the judgment for $1581.91? It is well settled that the doctrine of laches and estoppel applies to a county or other municipal corporation as well as to individuals."

This statement is somewhat broader than the facts. The record does not show that the county received $1,581.91, or any substantial part thereof, for the lands involved in this suit. But we need not go into the details of this matter. Nor need we discuss the further question as to whether defendant would be estopped, even if it be granted that the facts worked an estoppel *in pais* as against the county. This, because in our judgment the facts relied upon did not preclude the county from selling and patenting the land, as it did to defendant's grantors. Let us reiterate the facts. First, we have a void sheriff's sale, as evidenced by recitals in the deed made thereunder. Secondly, we have the county officers assessing the lands to the grantee in this void deed, and the county officers receiving from such grantee the taxes as assessed. These are the facts relied upon by plaintiff as and for an estoppel *in pais*. We recognize that a county can be estopped

under some facts. That doctrine seems to be generally recognized. But we do not agree to the proposition that the mere assessment of land by county officers, and the collection of taxes levied under such assessments, by other county officers, will estop a county from asserting title to land, to which it has either the legal or equitable title. The Simpson case, supra, deals with the doctrine of estoppel *in pais* as to counties, but what is there said does not make out a case for this plaintiff. The facts held in solution there are not the facts here. We know of no court which has gone to the length that plaintiff would have us go in this case. The only matter of substance urged as an estoppel is this void sale, this sheriff's deed, void upon its face, and the fact that the lands were assessed and the taxes collected for a period of years. These things are insufficient. In the case of Hooke v. Chitwood, 127 Mo. l. c. 376, MACFARLANE, J., said:

"The lands belonging to the county could only be sold and conveyed in the manner, pointed out by the statute. For the purpose of managing and selling swamp land the county court is not the general agent of the county. The statutes constitute the warrant of authority. [Sturgeon v. Hampton, 88 Mo. 213.] *Much less could the county be estopped to assert title by the fact that the county court had levied, and the collector had collected, taxes upon the lands over which the court is given control.*"

The italics are ours. So too in the early case of City of St. Louis v. Gorman, 29 Mo. l. c. 599, SCOTT, J., said:

"The city being the owner of the land assessed and sold for taxes to the defendant through the instrumentality of her officers, it is maintained by him that she is estopped to deny the regularity of the proceedings by which he claims title.

"The city is a body corporate, clothed with extensive powers for the management of her municipal

affairs. She can only act through her officers and agents; and if those officers, in violation of her ordinances, do unauthorized acts to her prejudice, it would be hard that she could be bound by them. This surely is not the law in relation to natural persons who act through their agents. If the agent exceeds his authority, his constituent is not bound. Those dealing with agents must look to the extent of their power. Agencies are indispensable in the transaction of the business of men; and, if those who employ them are estopped to deny the validity of the acts performed by them, commerce must be restrained within very inconvenient, if not ruinous, bounds. *The State of Missouri owns a tobacco warehouse in St. Louis; if the state officers should assess that property in the name of an individual, and sell it for the taxes, would any one maintain that she was estopped to deny the validity of a title claimed under such a sale?* The State has delegated to St. Louis the powers necessary for her municipal government, thus imposing on her an obligation that would otherwise devolve on the State. The city, in the discharge of this duty, is compelled to act by officers. Now, if the State, acting through her officers, is not bound by their unauthorized acts, we can see no reason why the city, in the exercise of functions pertaining to the State and for the performance of which she is substituted in the place of the State, should not stand, in relation to the agents she may employ, on the same ground that the State would to her officers.

"We must all see the numberless frauds the sanctioning of the principle insisted on would produce. The argument confounds the city with her officers and assumes that they are the city. If an officer of the city, in violation of her ordinances, makes a contract with an individual, is the city bound by such a contract? Must not those who contracted with the officers employed by the city see that the officers, with whom they are contracting, conduct themselves in pursuance to

law? The defendant, claiming that he has obtained the title of the city to a portion of her commons through her officers, is compelled to show that these officers, in assuming to pass a title, acted in pursuance to the ordinances prescribed for the regulation of their conduct on such occasions. This is a well established rule in regard to all those deriving title to land by means of a sale for the taxes. *The bare statement of the law in relation to estoppels in pais is sufficient to show that it can not apply to transactions where there is the interposition of third persons as agents acting in violation of their authority.*" Italics are ours. The Supreme Court of Nebraska in the recent case of State v. Ball, 90 Neb. 307, l. c. 315, thus puts it:

"The taxing officers are not vested with discretion to tax or refrain from taxing property within their respective jurisdictions. If they fail to levy taxes upon land subject to taxation, the levy may subsequently be made; if they levy taxes upon land not subject to taxation, the levy is void. They are not vested by law with power to perform any act which will estop the State from asserting title to the school lands, which it holds in trust for the benefit of all of the school children within its boundaries."

In the early Michigan case of Crane v. Reeder, 25 Mich. l. c. 320, COOLEY, J., said:

"It is further insisted, on behalf of the defendants, that the verdict should be suffered to stand notwithstanding any errors, because the State, by causing the lands to be assessed for taxation, and selling the same for delinquent taxes, waived its right to insist upon an escheat, and estopped itself from afterwards claiming the land. The doctrine, that the State would waive its rights to its lands, or estop itself from claiming them, by taxing them to an occupier, and taking proceedings to enforce payment of the taxes, would be rather startling to the officers having

charge of the public domain, and would indicate an easy mode in which trespassers might convert their trespass into a complete ownership.''

The Iowa court in Howard County v. Bullis, 49 Iowa, l. c. 521, says:

''The conclusion that the county is not estopped to set up its title' to the lands by the unauthorized act of its officers in assessing and selling them, is in accord with our decision in Buena Vista County v. The Iowa Falls & Sioux City R. R. Co., 46 Iowa, 226; Bixby v. Adams County, 49 Iowa, 507. [See, also, St. Louis v. Gorman, 29 Mo. 593; Rossire v. Boston, 4 Allen, 57; McFarlane v. Kerr, 10 Bosw. 249.] ''

The Indiana court in Reid v. State ex rel., 74 Ind. l. c. 258, puts the rule thus strong:

''Lastly, the appellants ardently insist that the evidence proves a state of facts which shows that the State is estopped *in pais* by her own acts, from claiming the land against the appellees.

''It may be conceded that the evidence fairly proves the following facts: That, upon the death of Joseph Emisberger, January 10, 1850, the land at once escheated to the State; upon that day the right of the State to the land became complete. The land was sold in February, 1862, to pay the taxes delinquent upon it for the years 1859, 1860 and 1861; that Nathaniel West was the purchaser of the land at the sale for taxes, and received the regular certificates of purchase therefor from the auditor; that he assigned these certificates to John S. Reid, who, in February, 1864, received the auditor's deed for the land; that, in December, 1869, John S. Reid conveyed the land to Lafayette McCulloch, in trust for the benefit of Nancy J. Reid, in pursuance of which McCulloch, in 1872, conveyed the lands to Nancy J. Reid; that, in 1873, John S. and Nancy J. Reid sold and conveyed the land to Christian F. Smith, who has ever since been in possession thereof and claiming title thereto. All of these

deeds of conveyance were duly recorded. Lasting and valuable improvements have been made upon the land since its sale for taxes. It may be conceded, too, that these facts show that the State, through her officers, sold the land for delinquent taxes, which partly accrued after she became the owner of the land; that the proper public officer made a deed of conveyance of the land two years after its sale for taxes, at a time when the State owned the land, and that the State made no claim to the land until twelve years after the sale for taxes—and it may be presumed that she collected her taxes from it during all this time—while it was held and claimed adversely, under the sale.

"But all these things conceded, it does not follow, in our judgment, that a case of estoppel *in pais* is made out against the State from asserting her title to the land by virtue of the escheat. In the absence of misrepresentation or fraud, of which there is no pretense, it is of the essence of an estoppel *in pais* that the party claiming the benefit of the estoppel shall have acted in ignorance of material and relevant facts within the knowledge of the other party, or which the other party ought, under the circumstances, to have known and communicated. No just claim can be made that the purchaser at the tax sale in question, and the successive grantee under the tax deed, were not as well acquainted with the facts, and as able to learn them by inquiry, as the State or her officers who had any part in making the sale and conveyance. To say the least, the parties had equal opportunity to know the facts, and were alike bound to know the law, and if there is any estoppel in the case, it is not *in pais*, but by deed. But it will hardly be contended that an auditor's deed, made in consummation of a sale for taxes, can bar the assertion by the State of any claim or right to the land sold. Neither by express words nor by implication of law does such a deed contain a covenant either of seizin or warranty. It

does not purport to convey any right, title or interest of the State in the land other than its lien for the taxes assessed; and none of the parties to the sale in question could have supposed that a transfer of the title held by escheat was intended.''

And in the later case of The State v. The Portsmouth Savings Bank, 106 Ind. l. c. 458, the same court said:

''Did the assessment of taxes upon the lands in dispute, the collection of the same, and appropriation of the amount collected to public uses, estop the State to assert its title to the land? Bright and his grantees were claiming to own the land, and the taxes were assessed, doubtless, under the mistaken notion on the part of the officers, that the claim was well founded. Those officers, however, were ministerial officers, whose powers and duties were defined by statute. They had no power to bind the State, except when acting within the scope of their authority. The title being in the State, the lands were not taxable. The unauthorized acts of the ministerial officers in assessing taxes upon it, and collecting the amount from those claiming the land, will not estop the State to assert its title, even though the amount so collected by the officers had by them been appropriated to public uses. [Reid v. State ex rel., 74 Ind. 252, and cases there cited; McCaslin v. State ex rel., 99 Ind. 428; Union School Tp. v. First Nat'l Bank, 102 Ind. 464; State ex rel. v. Jones, 95 Ind. 175; Pettis v. Johnson, 56 Ind. 139; Mattox v. Hightshue, 39 Ind. 95; County of Buena Vista v. Iowa Falls, etc., R. R. Co., 46 Iowa, 226; Crane v. Reeder, 25 Mich. 303; City of St. Louis v. Gorman, 29 Mo. 593; United States v. Maxwell Land-Grant Co., 21 Fed. 19.] ''

It will be noticed that this court like the Iowa court, cites with approval the opinion of SCOTT, J., in 29 Mo. 593 cited by us, supra.

In the case at bar the county of Dunklin has done nothing to estop it from claiming title to the land. Before selling to defendant's grantors, it had not sold the land. It is true that Miller attempted to sell it and take the title, if any, the county had, but this was no act of the county. Miller's attempt was futile and resulted in a void deed. The title of the county was unaffected, and the property was not subject to taxation. The acts of assessing taxes against this public property, as held by the authorities, were void acts, and can not constitute the basis for an estoppel *in pais*. The plaintiff, therefore, made no prima-facie case of title, and his petition should have been dismissed and judgment entered accordingly.

The judgment is reversed and the cause remanded to the circuit court with directions to dismiss the petition of the plaintiff and enter judgment for the defendant for its costs. All concur: *Woodson, P. J.,* and *Bond, J.,* in result only.