C. T. Bostwick, Plaintiff in Error, v. James Freeman, Defendant
in Error.—160 S. W. (2d) 713.

Division One, February 26, 1942.

(1)

2

*Leonard Johnson, W. L. Johnson, Thompson & Griswold* and *Perry A. Brubaker* for plaintiff in error.

4

*R. H. Musser* for defendant in error.

BRADLEY, C.—Plaintiff in error, plaintiff below, filed suit in ejectment against defendant in error to recover possession of the SW¼ of the SE¼ of Sec. 30, Twp. 57, R. 32, Clinton County. A question of title was raised, by subsequent pleadings, by both parties and the cause concededly became one in equity to determine title. The venue was changed from Clinton County to Gentry County, where the court found that plaintiff in error had no interest in the land, but that defendant in error was the owner, and plaintiff below sued out writ of error. We shall refer to the parties as plaintiff and defendant.

James W. Watson executed his will July 21, 1925, and died in May, 1926, seized of the land in question and other land. In the will, six forties, in said section 30, were devised to testator's children, and grandchildren, subject to the life estate devised to his wife, Kansas Watson. The wife and the other devisees survived the testator, but the wife died in 1926. The remainder interest in the land in question was devised to Charles E. Watson, son of the testator. The wife was named executrix in the will, but she waived her right to administer, and Charles E. Watson was appointed administrator with will annexed.

Plaintiff claims title under a quitclaim deed dated June 1, 1927, from Charles E. Watson and wife, and under a deed dated May 9, 1928, made to him by Watson as administrator. The administrator's deed is based upon an alleged private probate sale, April 18, 1928, of the land in question to pay debts of the testator. Defendant claims title under a sheriff's deed based upon a probate court judgment, Clinton County, rendered May 11, 1935, against Charles E. Watson as administrator of the Watson estate and the sureties on his administrator's bond. The judgment, sheriff's sale, and the sheriff's deed to defendant were subsequent to plaintiff's deeds, but defendant contends that the quitclaim deed and the administrator's deed to plaintiff were mere shams, phony, and that Charles E. Watson was,

in fact, the owner of the land in question at the time of the judgment and at the time of the levy and sale thereunder. Defendant has been in possession since shortly after his purchase at the sheriff's sale September 23, 1935.

The principal questions are: (1) Was administrator Watson, in fact, the owner of ▆▆▆ the land at the time of the probate court judgment, or, to state the question otherwise, were the quitclaim deed and the administrator's deed, under which plaintiff claims, mere shams, phony, as defendant contends? and (2) Was the probate court judgment against Watson a valid judgment?

Plaintiff introduced, with other evidence, the quitclaim deed, the administrator's deed, and called administrator Watson as a witness. The quitclaim deed to plaintiff, as appears, supra, was executed by Watson and wife June 1, 1927, and recites a consideration of $300. The administrator's deed (May 9, 1928) to plaintiff recites that it was based upon an order (April 18, 1928) of the probate court of Clinton County; that Cecil T. Bostwick, plaintiff here, became the purchaser of the land in question for $2400, and had paid $1600 cash to the administrator and for the balance had executed a note for $800 due in 5 years and secured by deed of trust on the land. The quitclaim deed and the administrator's deed were duly recorded.

Administrator Watson, as a witness for plaintiff, testified that prior to his father's death, he had the land in question rented from his father, and that upon his father's death, he went into full possession and remained in possession until defendant took possession. He says, however, that, after "the sale of the land in the probate court," he rented from Bostwick, the plaintiff. Watson further testified that plaintiff got the $1600 claimed to have been paid when the administrator's deed was executed, from his (Watson's) wife, and gave a note therefor to her, and that plaintiff executed the $800 note and deed of trust as recited in the administrator's deed. He said that plaintiff paid $1600 first, and paid later $300 on the $800 note, and paid the balance of the $800 note by paying the balance on a note owed in his lifetime by James W. Watson, deceased. Administrator Watson, January 6, 1933, satisfied the record of the deed of trust securing the $800 note.

The facts upon which defendant relies are about as follows: The probate court judgment against administrator Watson, and upon which defendant's claim of title is based, was for $459.15, and, as stated, was against Watson, administrator, and the sureties on his administrator's bond. Among the grounds upon which the validity of the judgment is attacked is that there was no notice given the administrator or his sureties of the hearing resulting in the judgment. Administrator Watson filed five settlements and these were introduced by the defendant. The record does not show the date of the first settlement, but it appears from the settlement that the

balance due the estate was $3447.64. The second settlement was filed and approved August 11, 1927, and shows a balance due the estate of $3385.23. The third settlement was filed and approved January 17, 1928, and shows a balance due the estate of $3521.91. According to the settlement, $2136.80 of this balance was for notes due the estate.

. So far as appears, no settlement was filed subsequent to January 17, 1928, until February 5, 1935, at which time the administrator filed what is termed a final settlement. By this settlement it is made to appear that the estate owed the administrator $38.42, but the settlement was not approved. Thereafter, Cora Roberts, Mollie Watson, guardian of Carl J. and Edna L. Watson, minors, grandchildren of James W. Watson, deceased, A. R. Alexander, and Merrill K. Watson, filed exceptions to the final settlement. February 28, 1935, the court issued a citation to the administrator, which stated that the named exceptors had filed exceptions. The citation directed the administrator to appear in the probate court on March 14, 1935, at 10 A. M. and show cause why he had not made a just and true account, and why he should not be removed as administrator, "and to make final settlement of all property and assets of said estate in your hands and deliver same as may be ordered by the court." The citation was served on the administrator on March 1, 1935, in DeKalb County, by the sheriff of that county.

March 14, 1935, the return day of the citation, there was a hearing in the probate court on the exceptions, at which hearing the administrator was present, but not the sureties on his bond, or either of them. The court, in its finding, reviewed various charges and credits made and taken by the administrator and found that he owed the estate $1663.34.

March 20, 1935, the court made an order which recited that the court had that day examined the administrator's bond, and "it appearing to said court" that on September 3, 1932, citation was issued to the administrator directing that he make a "new bond," and it further appearing that on September 17, 1932, the sureties on the administrator's bond had filed a suggestion of his insolvency ▬ (See Sec. 28, R. S. 1939) and of his waste of the estate, and had expressed a desire to be relieved of further liability on the bond, it was ordered that the administrator "enter into a new bond as such administrator with good and sufficient sureties, in the sum of $3,250.00, to be conditioned according to law, and that he be notified hereof by a certified copy of this order sent to him by registered mail at his present post office address, Stewartsville, Missouri (DeKalb County) and that unless a new bond is so entered into within ten days from the date of the receipt of this order by said administrator, he will be removed as such administrator."

8

March 29, 1935, the administrator asked for and was granted leave to file an amended final settlement. In the application for such leave it was stated that he had discovered certain errors causing the final settlement "not to conform to the facts, and that said settlement is incorrect, and that this petitioner, the above named administrator, desires to file an amended settlement to correct said errors." The amended final settlement was filed April 18, 1935, but was not approved. In the amended final settlement it appeared that the estate owed the administrator $13.07, and not $38.42, as was shown in the original final settlement. On the day that the amended final settlement was filed, the probate court adjourned until May 11, 1935, at which time, as appears, supra, the judgment against the administrator and his sureties was entered.

There is no showing that the administrator, his sureties, or either of them, or any one interested in the Watson estate, appeared on that day, May 11, 1935. And there is no showing that the administrator, or any one else, was served with notice to appear on that day. The administrator was in court the day court adjourned to May 11th, but there is nothing to show that he was present at the time of adjournment. And there is nothing in the order of adjournment, so far as appears, as to what would be taken up on May 11th.

Pertaining to the Watson estate, the court, on May 11, 1935, found: (1) That theretofore the administrator had been ordered to file a proper settlement; (2) that a hearing was had March 14, 1935, at which the administrator and his attorney were present, and that at this hearing the just indebtedness of the administrator to the estate was determined; (3) "that thereafter (March 20, 1935) by an order of record, and after due notice, this court directed" that the administrator file a good and sufficient bond in 10 days, and that he has failed to do so.

On May 11, 1935, the letters of administration granted to Watson were revoked, and Julian L. O'Malley was appointed de bonis non and qualified same day. And the court, as appears from the order, went on to find that ex-administrator Watson should pay Nellie Watson, guardian, $170.83; the widow and heirs of Alfred H. Watson, deceased, $158.17. These items were for alleged excess charges made by administrator Watson for the release of two forty-acre tracts of the estate from "the indebtedness of the estate." It was further found that administrator Watson had taken credit for $67.45, costs in certain estate litigation, which costs he had not paid, and that he had taken credit for probate court costs, amounting to $29.75, and an attorney's fee of $15.00, neither of which he had paid. Also, it was found that he had taken credit for $17.95 for commission to which he was not entitled. The total was $459.15.

It was found that the administrator was indebted to the estate in the sum of $459.15 for the use and benefit of those mentioned, Nellie

Watson et al., supra. It will be noted that on March 14, 1935, the court found that the balance due the estate was $1663.64. And on May 11, 1935, it was found that the $459.15 was "now due Julian L. O'Malley, administrator, from Watson and the sureties on his official bond." And it was "adjudged and decreed by the court that the said Julian L. O'Malley have and recover of and from Charles E. Watson" and his sureties, naming them, "the sum of $459.15, and it is further ordered and adjudged by the court that upon the collection of said sum the said Charles E. Watson" and the sureties "be and are hereby fully released from any and all further liability by virtue of being principal and sureties on said administrator's bond as aforesaid.

"It is further ordered, adjudged and decreed that execution issue for and against said parties for said sum.

"And it is further ordered, adjudged and decreed by the court that the said Julian L. O'Malley, administrator aforesaid, proceed forthwith to collect said sum of $459.15 and that when collected he make distribution thereof in accordance with this order and judgment."

The sheriff's return on the execution shows that defendant purchased at the execution sale on a bid of $600. Defendant also invokes certain portions of the evidence of administrator Watson. As stated, supra, Watson testified that plaintiff paid to him $1600 in cash when he, plaintiff, purchased the land in question at the probate sale. On being asked where he deposited the $1600 cash, he said "I don't think I deposited it anywhere. I think it was taken and paid on the Hemple note in cash." The Hemple note was a $4142.00 note given to the Bank of Hemple by James W. Watson and wife, April 24, 1926. Reminded that the cashier of the Bank of Hemple had testified that a payment on that note had been made by the administrator with a check, Watson said, "Yes, and I paid him some more that same day."

Defendant introduced a deposition of plaintiff taken in another case. Prior to 1922, administrator Watson owed one Kelley a note secured by deed of trust on some land. Kelley foreclosed November 6, 1926, and from the foreclosure there was credited on the note the sum of $2052.20, leaving a balance due of $567.76. Thereafter, Kelley brought suit, "to set aside some conveyances," against Watson, individually and as administrator, his wife, Cecil T. Bostwick, plaintiff here, and A. R. Alexander, who was trustee in the $800 deed of trust given by plaintiff to secure, as claimed, the $800 note, supra. In the suit to set aside, and subsequent to both the quitclaim and the administrator's deed, Kelley, on December 13, 1928, took the present plaintiff's deposition in Chandler, Oklahoma, and that is the deposition introduced. It was admitted on the theory that it contained admissions against interest. In the deposition plaintiff testified:

That he was a brother of administrator Watson's wife; had never married; was about 30 years old and resided in Lincoln County, Oklahoma, and had never resided in Clinton County, Missouri, except for about 3 months in 1919 or 1920; that he was in Clinton County, Missouri, in August, 1923, but had not, since then, been in Clinton County. He further testified that he had not seen Charles E. Watson since 1924. (Watson testified that all transactions with plaintiff as to the purchase of the land, etc., were by mail, but that he had none of the letters.) In the deposition plaintiff was asked if he was familiar with the SE¼ of the SW¼ of Section 30, supra, and said that he had seen it. The land in question is the SW¼ of the SE¼. The deposition then goes on as follows:

"Q. You at one time owned that piece of property? A. No, sir. Q. Have you ever owned that piece of property? A. No, sir. Q. On or about the 5th day of May, 1928, will ask you to state whether or not you executed a quitclaim deed, naming A. R. Alexander and Charles E. Watson, administrator of the estate of James W. Watson, deceased, as grantees, whereby you conveyed the property just described, to those parties? A. I think I did, if I remember right. Q. You think you did? A. Yes. Q. Ask you to state whether or not you became the purchaser of the property just described at an administrator's sale on the 18th day of April, 1928? A. Did I purchase it? Q. Yes. A. No, sir. Q. Then if the records of Clinton County, Missouri, disclose that you became the purchaser of that property at an administrator's sale, that is a mistake, is that right? A. May be, yes; if I remember right. (The report of sale was filed April 18, 1928, and shows only the land in question sold to plaintiff on that date.) Q. Ask you to state whether or not you paid Charles E. Watson or any person for him, as administrator of the estate of James W. Watson, deceased, the sum of $1,600.00, as the purchase price of the property above described, on or about the 18th day of April, 1928? I don't think I did, if I remember. Q. Ask you to state whether or not on or about the 1st day of June, 1927, you executed and delivered a quitclaim deed to Charles E. Watson and Elsie L. Watson, conveying the property above described? A. Yes, sir. Q. What was the consideration for that deed? A. I have forgotten. Q. To refresh your memory, was it $300.00? A. It might have been; something like that. Q. Now, as a matter of fact, it was Charles E. Watson and Elsie L. Watson that conveyed that property to you, wasn't it? A. It might have been. Q. Did you pay Charles E. Watson and Elsie L. Watson $300.00 for the property ▮▮▮▮ above described, on or about the 1st day of June, 1927? A. I don't remember whether I did or not. (June 1, 1927, was the date of the quitclaim deed.) Q. Do you now remember whether or not you bought the property from them? A. No, sir. Q. You don't remember of purchasing this property at an administrator's sale?

A. No, sir. Q. Do you now have any claim on this property? A.
No, sir. Q. Have you ever had any claim on this property? A. No,
sir. Q. Ask you to state whether or not, on or about the 5th day of
May, 1928, you executed to Charles E. Watson, administrator, a
promissory note in the sum of $800, bearing interest at the rate of five
per cent annually, and due in five years from that date? A. No,
sir; I don't remember anything about it. . . . Q. Did you ever
at any time pay Charles E. Watson, administrator of the estate
of James W. Watson, deceased, $1,600.00 in money—A. No, sir. Q.
As part purchase price of the land just described? A. I don't think
I did, if I remember right. Q. Then if the records pertaining to this
land, in Clinton County, Missouri, show that you purchased this land
at an administrator's sale, for the sum of $2,400.00, and that you
executed a trust deed to secure the sum of $800.00, as partial payment
on this land, those records are wrong? Is that true? A. May be.
Q. Don't you know? A. Sir? Q. Don't you know? A. To be
frank with you, I don't believe I remember. Q. You don't remember
of purchasing the land? A. No, sir. Q. Will you now say that
you did purchase the land? A. No, I didn't purchase it. Q. You
now say you didn't buy the land? A. Yes. Q. Do you now say
that you did receive a quitclaim deed to this land from Charles E.
Watson and Elsie L. Watson, dated June 1, 1927? A. I don't
remember whether I did or not. Q. Do you say you didn't? A.
I might have. Q. Do you now say that you paid the Watsons $300.00,
on or about that date, as a consideration for the execution of this
quitclaim deed? A. I don't think so. Q. Do you say that you
didn't? A. Yes, sir.''

As stated, plaintiff, in the deposition, was asked about the
SE¼ of the SW¼, and not the SW¼ of the SE¼, the land in ques-
tion, and plaintiff, in the brief, calls attention to that fact in urging
the alleged incompetency of the deposition. When the deposition
was offered, such objection was not made. The objection then made
was that it was ''a record of the circuit court of another circuit and it
has not been properly identified.'' There is some evidence in the
record tending to show that plaintiff claimed to own land of the James
W. Watson estate other than the land in question, but from the
inquiries made in the deposition, it is quite apparent, we think, that
plaintiff, in the deposition, was being asked about the land involved
here.

It also appears that neither Mrs. Watson, who is said to
have loaned plaintiff the $1600, nor plaintiff, testified. The case was
on trial for two days, and plaintiff was present. Just before the
case closed, Watson was recalled by defendant and was asked where
his wife was, and said that she was at home. Then he was asked
where plaintiff was, and said, ''He went to my place at Stewartsville.
He had to take Butler home.'' Who Butler is, does not appear, nor

12

does it appear why plaintiff had to take him home, or why he did not testify. It is well settled that "the failure of a party having knowledge of facts and circumstances vitally affecting the issues on trial to testify in his own behalf, or to call other witnesses within his power who have knowledge of such facts and circumstances, raises a strong presumption and inference that the testimony of such persons would have been unfavorable and damaging to the party who fails to proffer the same." [Russell v. Franks et al., 343 Mo. 159, 120 S. W. (2d) 37, l. c. 41, and cases there cited.] However, the unfavorable inference rule stated is not applicable here because defendant introduced his adversary's deposition. One may not have the advantage of the inference and the evidence, too. [Clapp v. Kenley et al., 277 Mo. 380, 210 S. W. 10, l. c. 12, 13.]

Defendant called as a witness, John J. Robinson, an attorney. Over the objection and exception of plaintiff, Robinson was permitted to testify that administrator Watson told him that he, Watson, "owned the land (of the Watson estate) that was in the name of Cecil Bostwick." The objection to the evidence of Robinson was on the ground that whatever was said to Robinson on the subject was said when the relation of attorney and client existed and under such circumstances as to make it privileged. It will not be necessary to rule the point. Absent this evidence, there was sufficient evidence to support the finding of the trial court on the question of plaintiff's ownership of the land in question.

On an objection made by plaintiff to a question asked one of defendant's witnesses, the trial court said: "Here is the way I look at this matter. Apparently the parties themselves didn't consider Bostwick got title through this quitclaim deed, given shortly after the father's death, but if he did, he took it subject to the father's debts. So far as I have been able to find, there is no approved final settlement. There is no place in the settlement he made where the proceeds he had were ever accounted for. No place in the annual settlements, which are not final, but are admissions against interest—no place where this money was ever accounted for."

██ It "is well settled that, in statutory actions to quiet title to land, plaintiff must prevail solely upon the strength of his own title, and not upon the weakness of the title of his adversary." [Cullen et al. v. Johnson, 325 Mo. 253, 29 S. W. (2d) 39, l. c. 46, and cases there cited. See also, Owens v. Owens et al., 347 Mo. 80, 146 S. W. (2d) 569, l. c. 577; Brown v. Weare et al., 348 Mo. 135, 152 S. W. (2d) 649, l. c. 655.]

██ The trial court found that plaintiff had no title, and there is nothing in the record that would justify the overturning of that finding. It will not be necessary to rule the point on plaintiff's contention as to the validity of the sheriff's deed to defendant. The validity of that deed is no concern to plaintiff, if he has no title.

[Cullen et al. v. Johnson, 325 Mo. 253, 29 S. W. (2d) 39, l. c. 46; Senter v. Wisconsin Lumber Co., 255 Mo. 590, l. c. 601, 602, 164 S. W. 501; Wheeler v. Reynolds Land Co., 193 Mo. 279, l. c. 291, 91 S. W. 1050; Parker v. Wear et al. (Mo.), 230 S. W. 75, l. c. 78.]

The judgment entered by the trial court recites that the court found that defendant "is the sole owner in fee simple absolute of the land" in question. That means, of course, as between plaintiff and defendant.

The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.