# WHEELER, Appellant, v. REYNOLDS LAND COMPANY.

### Division One, February 22, 1906.

1. **EVIDENCE: Out of Order: Before Close of Plaintiff's Case.** It was out of the regular order to permit defendant to introduce evidence tending to show that a patent from the county conveying swamp land to plaintiff was without lawful consideration, immediately after plaintiff had offered the patent in evidence and before he had closed his case in chief, and in strict right that should not have been permitted. But the order of the introduction of proof is largely within the discretion of the trial court, and as it appears on the whole record that no material wrong was done, the judgment will not be disturbed for that irregularity.

2. **QUIETING TITLE: Character of Suit.** A suit under the statute to quiet title is not technically a suit in equity, yet it is designed to determine all the questions, whether of law or equity, relating to the respective titles of the parties, and to put at rest the controversy.

3. ————: **Deed: Consideration: Parol Evidence: Parties and Privies: Common Source.** The rule that parol evidence it not admissible to entirely defeat a deed, or patent from the county conveying swamp land, does not stand in the way of a person who is in no sense a party or privy to the instrument, and against whom it is produced in a suit (like one to quite title) wherein the validity of the deed itself is open to direct assault, nor in case where both plaintiff and defendant derive title from a common source with no intervening or mesne conveyance.

4. ————: **Prima-Facie Showing.** A plaintiff in a suit to quiet title is not entitled to a decree declaring that the defendant's claim of title is invalid until he shows prima facie a valid title in himself, even though the defendant offers no proof of his own title. Plaintiff is not entitled to a decree, even though defendant goes no further than to show that plaintiff's title is invalid.

5. ————: **Patent to Swamp Lands: Invalidity: Suit by County.** Either party to a suit to quiet title to swamp lands, may show that a patent issued by the county to the other is invalid, because not issued in conformity to the statutes. It is not the law that the patent is valid until it is set aside in a suit instituted by the county.

6. ____: ____: Consideration: Gift: Common Source. The county is a public trustee of swamp land conveyed by the State to it, and cannot give it away. And where both parties to a suit to quiet title claim under different patents from the county, the defendant may show that plaintiff's patent, though on its face it recites a valuable consideration, was a mere gift, and therefore void.

7. ____: ____: ____: ____: Undeterminable Contract: Suit for Damages: Compromise. Plaintiff filed his conditional bid with the county court for all the swamp land owned by the county, and a contract was entered into for 57,000 acres "pretended to be conveyed" to a railroad company in 1867 and all other swamp lands not theretofore actually and legally sold by the county, and by a subsequent contract it was agreed that the consummation of the sale was postponed until the titles could be cleared up by judicial determination, but the agreement did not require either party to bring suit. Afterwards the county court cancelled these contracts, and thereupon plaintiff instituted suit against the county for $50,000 damages, and in settlement of that suit issued to plaintiff a patent for nearly 20,000 acres and returned to him all the money he had paid with interest. *Held*, first, that the effect of the contract, if it had any legal effect, to postpone its consummation until the titles were judicially determined, was to tie the hands of the county for an indefinite period, if not forever, and hence the court had no authority to make it, even if the court could make an executory contract to convey swamp lands, which is not determined; second, although the patent expressed a consideration of $25,000, it was, under the law, which regards substance and not form, a mere gift, and therefore void; and, third, the compromise of the lawsuit was not a valuable consideration, because the contract was invalid and plaintiff had done nothing under it, and the court could dispose of the lands only as the law authorized.

Appeal from Howell Circuit Court.—*Hon W. N. Evans,* Judge.

AFFIRMED.

· *Albert N. Edwards* and *Geo. L. Edwards* for appellant.

(1) It was error to permit defendant by parol or other evidence to attempt to show the patent issued to plaintiff by Butler county was without consideration. "The general rule in this State is that the consideration

clause of a deed is open to explanation; that is to say, that while it is not allowable to show no consideration for the purpose of defeating the operation of the deed as a grant, the true consideration may be shown.'' Edwards v. Latimer, 183 Mo. 626. Many cases decided by this court announce the same rule. Furthermore, if on account of facts and circumstances *dehors* the patent, it is voidable, Butler county alone can take advantage of such defect. And since the patent is regular on its face, and in all respects, on its face at least, conformable to law, it is not void, and if it can be avoided by Butler county even, it can only be done by an appropriate affirmative action for that purpose. Simpson v. Stoddard County, 173 Mo. 458. Defendant's remedy is to assert its title to the land, if it has any. (2) Butler county had the power to compromise the suit commenced against it by plaintiff, and to accept in payment of the purchase price of its swamp lands agreed to be sold him by the terms of the compromise, the amount of money owing by the county to plaintiff as a result of the compromise. This being so, the patent for these lands executed by the county to plaintiff is based upon full payment of the purchase price for these lands as it recites, and is therefore valid. Sec. 3422, R. S. 1889 (now sec. 1777, R. S. 1899); Township Board of Education v. Boyd, 58 Mo. 276; Washington County v. Boyd, 64 Mo. 179; Railroad v. Anthony, 73 Mo. 431; Dunklin County v. Chouteau, 120 Mo. 587; Moss v. Kauffman, 131 Mo. 424; State ex rel. v. Adams, 161 Mo. 349; State ex rel v. Butler County, 164 Mo. 214; Morrow v. Pike County, 189 Mo. 610.

*L. F. Dinning, Wm. N. Barron* and *W. M. Williams* for respondent.

(1) Section 8197, Revised Statutes 1899, authorizing the sale of swamp land at private sale does not authorize the county courts to make an executory contract

of sale. (2) Nor to make a conditional sale based upon a contingency that may never happen. (3) A compromise by a trustee will not be upheld unless the transaction shows that he was actuated by good intentions and exercised due caution and fidelity in respect to the interests of his *cestui que trust*. (4) A donation by a county court of 20,000 acres of swamp land, by patent regular on its face, will not be upheld in a suit to quiet title, brought by the patentee under sec. 650, Revised Statutes 1899, two years after the date of the patent. Simpson v. Stoddard County, 173 Mo. 421. (5) The trial court did not err in excluding the swamp land patent, made by the county, without any consideration whatever, for 20,000 acres of land, when offered by the patentee two years after its date. Simpson v. Stoddard County, 173 Mo. 421. (6) The county court had power to sell the swamp land of the county—not to make a gift of it to appellant. The patent was void because it was issued without authority of law. A void patent confers no title, and cannot be made the basis of an action by the patentee, who knows it was issued contrary to law. Simpson v. County, supra; Walcot v. Lawrence Co., 26 Mo. 272; Book v. Earl, 87 Mo. 246. (7) Where it clearly appears from admitted facts and undisputed evidence that the judgment was for the right party, it will not be reversed on appeal. Newberger v. Friede, 23 Mo. App. 631; R. S. 1899, sec. 865. (8) Nor when this court is satisfied that the result of a new trial will necessarily be the same. State ex rel. v. Benedict, 51 Mo. App. 642; Conley v. Doyle, 50 Mo. 234; Bank v. Kemble, 61 Mo. App. 209. (9) Appellant, claiming under a swamp land patent issued by the county, without consideration, to himself, in 1899, admits that respondent claims under a prior conveyance, made by the county, in 1867, reciting a cash consideration. The judgment will not be reversed upon appeal, as the appellant is not prejudiced by the action of the trial court, and the result of a retrial must be the same. State ex rel. v. Bene-

dict, 51 Mo. App. 642; Conley v. Doyle, 50 Mo. 234; Bank v. Kemble, 61 Mo. App. 209.

VALLIANT, J.—This is a suit under section 650, Revised Statutes 1899, to quiet title to about 4,300 acres of land in Butler county, the same being a part of the swamp and overflowed land granted by the United States to the State of Missouri under the act of Congress of date September 28, 1850, conveyed by patent from the United States to the State of Missouri, and by the State to Butler county. The petition states that the land was conveyed to the plaintiff by Butler county by patent duly executed; that it is not in the actual possession of anyone, but is wild and uncultivated; that defendant claims some title in it which is adverse and prejudicial to that of plaintiff. The prayer is that the court ascertain and determine the estate, title and interest of plaintiff and defendant respectively, and define the same by its judgment or decree.

The answer admits that it is swamp and overflowed land granted by the United States to the State of Missouri and by the State to Butler county, and that defendant claims to be the owner of the same, but denies that it is wild and unoccupied, and denies that plaintiff has any valid estate in it; avers that the alleged patent from Butler county to the plaintiff was without consideration; that it is void and of no effect; that the defendant is the sole and absolute owner; that defendant and those under whom it holds have been claiming the land under patents from the county prior to 1880 and have been paying taxes thereon for more than twenty years prior to the act of March 14, 1901, amending section 9187, Revised Statutes 1899, by adding thereto a proviso the purpose of which was to quiet swamp land titles. Reply, general denial.

At the trial the plaintiff introduced in evidence the patent from the State to the county, reciting for its authority the act of the General Assembly of March 10,

1869, and the act of Congress of September 28, 1850, and conveying to the county all the swamp and overflowed lands within its borders. Then the plaintiff offered in evidence a patent from the county of Butler purporting to convey him certain lands described as swamp lands aggregating 19,987.98 acres, including the land in question in this suit, and reciting that the lands were purchased by the plaintiff from the county on the 29th of July, 1899, and that he had made full payment for the same to the county in sum of $24,984.97. To the admission of this patent in evidence the defendant objected on the ground that it was executed without consideration and in violation on the part of the county of its duty as trustee of the land, and the defendant asked leave to introduce evidence to sustain that objection. The plaintiff objected to allowing the defendant to introduce evidence on that point at that stage of the trial, but the court overruled the objection and exception was taken.

The defendant then introduced evidence tending to prove as follows:

The county court intending to sell all the swamp land within the county, invited bids for the same, to be received up to a certain hour on June 16, 1894. There were six bids received from that number of different bidders, ranging as follows: $1.35, $1.40, $1.42, $1.50, $1.57 1-2 and $1.65, the last and highest being the bid of the plaintiff in this suit, George B. Wheeler.

The plaintiff's bid, which was in writing, proposed to purchase all the swamp lands owned by the county and to pay into the county treasury $3,000, as a first payment, and the balance within ninety days "or sooner if abstracts can be had. I also proposed to pay for abstracting and all other expenses pertaining to investigation of title. Your petitioner permitting the county to reserve all lands occupied by actual settlers." On June 21st, 1894, the county court made an order accepting the plaintiff's proposal, reciting that it in-

cluded what was known as the railroad lands; conditioned that the $3,000 mentioned in the bid be paid into the county treasury within five days, the same to become forfeit if Wheeler should fail to pay the entire amount of the purchase money according to his bid of June 16th, and that he enter into a written contract to perform the conditions in that bid expressed. The $3,-000 were paid into the county treasury on that day. On August 16, 1894, by order entered on its record of that date, the county court appointed one Graddy as the county's agent to execute the contract referred to in the previous order. Thereupon a contract in writing of that date was executed by Graddy, acting as agent for the county, and the plaintiff herein in person, which, after reciting the Wheeler bid of June 16th, and its terms and conditions, the order of the county court of June 21st, accepting the bid with the conditions in that order contained, and the payment of the $3,000 as above stated, covenanted and agreed that the county would sell to the plaintiff 53,977.23 acres "heretofore pretended to be conveyed by Charles W. Addy as commissioner of Butler county to the St. Louis, Iron Mountain and Southern Railway Company," and 3,959.37 acres likewise conveyed by another deed of a commissioner of the county, the record book and pages where those deeds are recorded being specified, and all other swamp or overflowed lands in the county, except such as are occupied by actual settlers and such as the county had not previously sold according to law, the purchaser agreeing to purchase on the terms mentioned all such lands "so owned by the said county of Butler and to which said county has title and to furnish at his own expense a perfect and complete set of abstracts made by a competent abstractor" within ninety days from September 15, 1894, and to defray the expense the county might incur "in ascertaining the exact and total number of acres owned" by the county and which it was contemplated by the county to convey, and to pay

the full price offered in the bid therefor; on the performance of which conditions on the part of the plaintiff, the county was to execute to him a patent for the lands, but on failure to perform the conditions on his part, the obligation on the part of the county was to cease, the $3,000 were to be forfeited to the county, and the plaintiff was to bear his own expense.

On October 2, 1894, a written contract was executed between Graddy acting for the county and the plaintiff in person, reciting that "by reason of pending litigation affecting the title to said lands and by reason of other legal complications respecting the title to said lands, it is impossible now to be determined" the quantity of the land to which the county had title, therefore it was agreed that the consummation of the previous agreement be postponed until the title of the county to the lands should be judicially determined and then the contract was to be carried out. That agreement was approved by the county court and spread on the record of the court.

On August 9, 1895, the county court made an order which was spread on its record, referring to the above-mentioned contracts with Mr. Wheeler, reciting that he had failed to comply with their terms and conditions, and declaring them cancelled and rescinded.

Three years afterwards, April 16, 1898, the plaintiff brought suit against the county for damages, based on the action of the county court declaring the contracts cancelled and rescinded, laying his damages at $50,000. The cause was taken by change of venue to the Iron Circuit Court. In May, 1899, while that suit was pending, one Palmer offered to purchase from the county, at the price of $1.25 an acre, 25,000 acres of swamp land which was covered by the Wheeler contract. Palmer had had experience in previous litigation concerning the title to these lands, and knowing what the county court records showed of Wheeler's interest, would purchase from the county only on condition that he could obtain a quit-

claim deed also from Wheeler; he accordingly  paid
Wheeler $6,250, which was twenty-five cents an acre for
a quitclaim to the 25,000 acres, and then bought  the
same land from the county at $1.25 an acre.

On June 26, 1899, while the suit for damages  was
pending in Iron county, Mr. Wheeler presented to the
county court of Butler county a written proposition of
compromise, which was that if the county would return
to him the three thousand dollars theretofore paid by
him with interest at six per cent per annum and pay
him twenty-five thousand dollars in addition he would
accept the same in full satisfaction of his suit for dam-
ages, and that he would purchase from the county cer-
tain lands therein described, aggregating  19,987.98
acres (which includes the land involved in this suit) at
the price of $1.25 per acre, the county to pay itself out
of the sum coming to him under the compromise.

On July 29, 1899, the county court made an order
accepting the proposition for compromise and ordering
the clerk of the court to issue to the plaintiff a patent
for the land specified, and for payment thereof to with-
hold from the $25,000 compromise sum the price of the
land at $1.25 an acre.    In pursuance of which the pat-
ent under which the plaintiff now claims was issued,
which patent recites that "it appeared to the satisfac-
tion of the county court of Butler county, that on the
29th day of June, A. D. 1899, Geo. B. Wheeler made
full payment for said land in the sum of twenty-four
thousand nine hundred and eighty-four  dollars  and
ninety-seven cents to said Butler county." There was
in fact no payment, however, except the cancelling to
that amount of the compromise sum. At the same time
the county returned to the plaintiff the $3,000 he had
paid in on the contract, with interest amounting to
$900.

In the patent it is recited that the grantee waives
the right given to a bona fide purchaser by section 6509,
Revised Statutes 1889, to come back on the county for

any part of the purchase money paid, if it should be afterwards ascertained that the county had previously sold any of the land to another. On October 26, 1899, the plaintiff dismissed his suit for damages.

At the close of the defendant's evidence on this point the court asked if the plaintiff desired to introduce any evidence in support of the patent and plaintiff's counsel answered that he did not. Thereupon the court sustained the defendant's objection to the patent, and the plaintiff accepted; a judgment for the defendant followed, and the plaintiff appealed.

I. Allowing the defendant to introduce the evidence tending to show that the patent offered by the plaintiff was without lawful consideration before the plaintiff had announced that he had closed his case in chief, was out of the regular order and in strict right should not have been done. The plaintiff had traced the title from the United States to the State, and from the State to the county, and then offered the patent from the county to him, which was fair on its face, and made a prima-facie title. The patent should have been received in evidence and the defendant required to withhold its evidence until the plaintiff had rested. But the testimony was competent as tending to impeach the patent; the only error in receiving it was in allowing it to come in out of the proper order.

The order in which proof is allowed to be introduced, however, is to a great degree within the discretion of the trial court, and where upon the whole record it appears that no material wrong was done, the judgment will not be disturbed for irregularity allowed in the order of proof. In this case the plaintiff suffered no injury by this course; the chain of title under which he claimed was really ended with his patent from the county, and although he had not announced his case closed, yet he does not suggest that he had any other evidence to offer. On the question of the consideration paid for his patent he stated that he had no evi-

dence to offer. The error in receiving the evidence of the defendant out of its order did not affect the merits of the plaintiff's case, and therefore the judgment will not, for that reason, be reversed.

II. Appellant insists that beyond the question of the order of its introduction the testimony was incompetent, basing the proposition on the rule of evidence that whilst parol evidence is admissible to show the true consideration of a deed, though different from that expressed on its face, yet it is not admissible to defeat the deed itself as a conveyance by showing that there was no consideration at all to support it.

That rule, however, does not stand in the way of a person who is in no sense a party or privy to the deed and against whom it is produced in a suit wherein the validity of the deed itself is open to direct assault.

This is a suit under our statute to quiet title, which, though not technically a suit in equity, is designed to determine all the questions whether of law or equity relating to the respective titles of the parties and to put at rest the controversy. The plaintiff by his petition offers to show his title and maintain its validity and demands that the defendant show by what title he claims and the prayer in effect is that the court adjust the dispute forever between them, decreeing as between them the infirmity, if any, in the claim of either and adjudging which has the better title.

By the petition and answer it appears that the land in suit is swamp land given by the United States to the State of Missouri, and by the State to Butler county, and both parties claim under different grants from the county. The arguments on both sides carry the implication that the county held the title as trustee and could dispose of the same only as the statutes prescribed, and each contends that the patent under which the other claims is invalid because it was not executed in conformity to the law. In so far, therefore, as the

right of either party to a decree in his favor depends on the invalidity of the title claimed by the other, he has a right to go into that subject and show if he can that the claim of his adversary is invalid. Both of these patents are on record, both are fair on their faces, each party is claiming title under his patent, and the one is a constant menace and a source of disquiet to the other, therefore it makes a case in which either party has the right to bring the other into court under the statute to quiet the title, and when they are in court the court has jurisdiction to go to the bottom of both titles and make a decree putting the title at rest.

The plaintiff refers to Simpson v. Stoddard County, 173 Mo. 1. c. 458-9, wherein it is said that a patent to swamp lands from the county, regular on its face and based on orders of the county court, is valid until set aside by appropriate proceedings; that: "It is not absolutely void, but may be avoided in an action for that purpose, upon a showing of independent, unauthorized acts upon which the instrument is based." And it is contended that that means that the patent is valid until it is set aside in a suit instituted by the county for that purpose. But that is not what the court said in that case, and is not what was meant. If that were the law, then a party who held a valid patent from the county could have no relief from another patent that may have been issued by the county which, though fair on its face, was founded on a false bottom, until the county itself might see fit to interfere. If the county had conveyed its title by another patent that was valid, it had no further interest in the land and unless the other patent contained some covenant or agreement, express or implied, which would render the county liable for a breach, the county would have no such interest as would enable it to maintain a suit to set aside the alleged unauthorized patent. But whether the county could or could not sue, the party who held the valid title could sue to defend his own title or to put it at rest.

No one has a right to require another to come into court and show his title who can not himself show at least a prima-facie title; and no plaintiff is entitled to a decree declaring the claim of another invalid until he has shown that he himself has a better claim; in equity, as at law, if one recovers at all it must be on the strength of his own title.  Therefore, when the plaintiff calls this defendant into court to answer and show what title it has, he is not entitled to a decree declaring that the defendant's claim of title is invalid until he first shows prima-facie a valid title in himself, even though the defendant offers no proof of his own title.  If therefore the defendant's proof goes no farther than to show that the plaintiff's title is invalid, the plaintiff is not entitled to a decree.  If the plaintiff has no valid title, it is no concern of his to know whether or not the defendant's claim is valid.

It appears from the record in this case that both parties claim under different grants from the county, the plaintiff under a patent executed in 1899, the defendant under one executed in 1867.  The plaintiff in his brief says of defendant's patent that although it recites on its face that it was executed for a money consideration, yet in fact the real consideration was an agreement by the grantee to clear out and render navigable Black river which he never did, and that under the law as it then was the county had no right to appoint a commissioner to execute the patent, but that the Governor of the State alone could execute it, yet that this patent was executed not by the Governor but by a commissioner appointed by the county court.  Under the view we have taken of the plaintiff's title, the case is disposed of before a consideration of the defendant's title is reached.

The defendant says of the plaintiff's patent that it is invalid because although it recites a money consideration on its face yet in fact there was no consideration

to support it.   The proof sustains the defendant in that allegation.

Where the antagonistic parties both claim under a common grantor, if the property in question belonged to the grantor in his own right to do with it as he pleased, to sell it or give it away, if the prior grant was a gift and the other a sale for value, the holder of the latter could not impeach that of the former by showing that it was without a valuable consideration.   But where the common source was a public trustee who was authorized to sell only for a valuable consideration, yet who, in disregard of the trust, essayed to convey the property as a mere gift, a party holding a deed from the trustee executed in good faith for a valuable consideration is entitled, in a suit in which the respective titles are the subject of adjudication; to show the total want of consideration in the deed of gift in order to have it adjudged invalid.   Whether this would be so in case there had been an intervention of a mesne conveyance to an innocent purchaser for value is not a question in this case, for here we are dealing with the original grantee in the patent which is assailed for want of consideration.

Whatever differences of opinion there may be in other particulars in regard to the rights and duties of the counties in dealing with these swamp lands, all agree that the counties hold the lands in trust for a purpose or purposes declared by law, and that the counties may sell the lands, but no one contends that a county may give the land away without any valuable consideration.

Now let us see what consideration there was for the plaintiff's patent.

When the county invited bids in June, 1894, a number of bids were made, ranging from $1.35 to $1.65 per acre, the highest being that of the plaintiff, the next highest being $1.57 1-2.   So far as the record shows, the plaintiff by his bid prevented a sale by the county to

any of the other bidders. The plaintiff's bid was not for an unconditional purchase of all the swamp land in the county, but of all the swamp lands owned by the county, and it stipulated for an abstracting and an investigation of the title and a deferment of the main payment until that was done; therefore from the very beginning there was an uncertainty in respect of quantity and identification of the land. Then when the county court accepted the bid, on June 24, 1894, it did so on the condition that the plaintiff pay the $3,000 mentioned in the bid within five days, and that that sum be forfeited if the rest of the purchase money was not paid within the time proposed (ninety days) after the amount could be ascertained according to the terms specified in the bid. In the contract of August 16, 1894, whilst it is specified that the purchase was to cover about 57,000 acres of land previously "pretended to be conveyed" to the railroad company and all other swamp lands in the county not theretofore actually and legally sold by the county, yet it limited the parties to the sale and purchase of only such of those lands as to which the county held title. Then in October, 1894, another contract in writing was made in which it was recited that, owing to litigation and legal complications affecting the titles to the lands, it was impossible at that time to carry out the contract of August 16th, therefore its consummation was postponed until the titles could be cleared up by judicial determination, and that when the titles were determined if it was found that the lands belonged to the county, then the contract was to be in force.

Thus it appears that the only obligation the county ever essayed to undertake was to sell the plaintiff so much of the swamp lands in the county as it might thereafter be ascertained by judicial determination was owned by the county; and that is all that the plaintiff ever agreed to purchase.

One of the events on which the consummation of

this contract was to wait was the clearing up of the title to over 57,000 acres of land which had been apparently sold to a railroad company as long ago as 1867, and which had passed by mesne conveyances into how many hands can only be surmised.

The contract did not require either party to institute a suit or take any action looking to a judicial clearing up of the title, and as far as appears from the record, nothing in that way has been done.

The effect of this contract, if effect should be given to it as it purports, is to tie the hands of the county for an indefinite period, if not forever, so that it could not dispose of these lands except by the permission of the plaintiff; and that has been the practical result. When Mr. Palmer offered to purchase 25,000 acres of land and was willing to pay the price asked by the county, $1.25 an acre, he was unwilling to purchase with the Wheeler claim outstanding, and paid Mr. Wheeler $6,250, that is, 25 cents an acre, for a quitclaim deed.

It is contended in the brief for respondent that the statute, section 8197, Revised Statutes 1899, which confers power on the county court to sell the swamp lands, does not confer power to make an executory contract for such a sale. It is not necessary in this case to decide whether or not such a power is given. It is sufficient to say that under the circumstances of this case the county court had no authority to allow its hands to be tied so as to prevent it from executing its trust, as would be the case if effect was given to the contract in question.

In April, 1895, a new county court having come in, it declared the contract cancelled, and three years thereafter the plaintiff brought suit against the county for $50,000 damages. That suit he afterwards dismissed in consideration of the return to him of the $3,000 he had paid and $900 interest on the same, and a patent for 19,987.98 acres of land, including the land in this suit.

Thus the result of the transaction is that the plaintiff has received from the county a patent to nearly 20,000 acres of land for which he has paid nothing at all. If the county in the beginning had made him a deed of gift to this land no one would say that it was a valid conveyance, yet all these transactions put together amount only to a deed of gift. The law in such case regards the substance, not the form.

It is contended in the brief for appellant that the compromise of the lawsuit was a valuable consideration. We must keep in mind the fact that the county court was dealing with property that it held in trust and could dispose of only as the law authorized; that the plaintiff was dealing directly with the county and was chargeable with notice of the trust limitation on the county's power. Suppose that instead of going through the form of a suit for damages and the form of a compromise, after the agreement of October, 1894, whereby the consummation of the former contract was postponed until the title of the county could be cleared by future judicial determination, the county court had agreed with the plaintiff that in consideration of his release of the county from the contract of sale they would give him 25,000 acres of the land, would anyone contend that the trustee could do that? If it could not be done on a straight line, it could not be done in a circle.

The plaintiff had no real claim against the county for damages. In the first place, as we have seen, his contract was not valid, but even if his contract had been such as to have given him any claim on the land, the action of the county court in April, 1895, declaring the contract forfeited, did not impair his claim. If he had any claim to the land it rested entirely on transactions spread on the records of the county court. No subsequent purchaser from the county could have based a claim of being an innocent purchaser on the fact that the records of the county court of date April 9, 1895, declared the plaintiff's contract cancelled, because not

only did the order show on its face that it was the declaration of only one party to the contract, but it referred to the previous orders which contained the whole transactions, and if they gave the plaintiff the right he claims they also gave the subsequent purchaser notice thereof.

This is not like the case of State ex rel. Marshall v. Butler County, 164 Mo. 214, to which we are referred. There the county had entered into a contract with attorneys to institute and prosecute suits to recover lands held by claims adverse to the county, the attorneys entered upon the fulfillment of their contract, performed part of the work, incurred large expenses, and were proceeding to do all that they agreed to do when the county court without any cause rescinded the contract and refused to allow them to proceed. Of course the attorneys could not proceed to institute or prosecute suits in the name of the county when the county court forbade them doing so. But in the case at bar the plaintiff did not need the permission of the county court to institute legal proceedings to protect his title. He could have proceeded in spite of the order of April 9th, and, unlike the attorneys in the case last referred to, he has done nothing and paid nothing. The result of the whole transactions is that without the payment of any consideration at all the plaintiff covered all the swamp lands in the county with a cloud which has yielded him in cash $6,250, and he had obtained from the county court a deed of gift for nearly 20,000 acres of land which the county had no right to give away.

The trial court correctly decided that the plaintiff's patent, dated June 29, 1899, recorded in book 53, page 224, of the records of deeds of Butler county, was invalid.

The judgment is affirmed.

All concur except *Marshall, J.,* not sitting.