Arcadia Timber Company and Hemphill Lumber Company, Appellants, v. Joe Evans.—31 S. W. (2d) 988.

Division One, October 14, 1930.

*L. R. Jones* and *Orville Zimmerman* for appellants.

*John A. McAnally* for respondent.

ATWOOD, J.—Arcadia Timber Company, a corporation, and Hemphill Lumber Company, a corporation, commenced an action against Joe Evans to quiet and determine title to Lot Two (2) of the Southeast Quarter (SE¼) of Section Thirteen (13), Township Eighteen (18) North, Range Nine (9) East, by petition filed in the office of the Clerk of the Circuit Court of Dunklin County, Missouri, on June 7, 1920. Defendant filed answer claiming title under the ten-

year Statute of Limitations to the following described part of the land described in plaintiffs' petition:

"Beginning 20 chains east of the southeast corner of the Southwest Quarter of Section Thirteen (13), Township Eighteen (18), Range Nine (9), running thence east 5 chains, thence north 20 chains west to west boundary of Lot Number Two (2) of the Southeast Quarter of said Section Thirteen (13), Township Eighteen (18), Range Nine (9), thence southeasterly direction along the boundary between said Lot No. Two (2), and Southwest Fractional Quarter of Southeast Quarter of said section to beginning point containing about 14 acres, more or less."

Plaintiffs' reply was a general denial. The case was tried to a jury in December, 1921, and the following verdict was returned:

"We, the jury, find the issues joined in the above entitled cause, for the defendant, to-wit: That defendant is the owner of the premises described in the petition and in the evidence by adverse possession."

Plaintiffs filed motions for a new trial and in arrest of judgment which were overruled. Undertaking to perfect their appeal to this court plaintiffs filed abstract of the record and brief, but the record disclosed that no judgment had been entered by the trial court and the appeal was dismissed on the ground that it had been prematurely taken. [Arcadia Timber Company and Hemphill Lumber Company v. Evans, 304 Mo. 674, 264 S. W. 810.]

Thereafter, on October 4, 1926, appellants herein filed transcript of judgment and order allowing appeal in this cause, from which it appears that after our mandate was filed in the Circuit Court of Dunklin County, plaintiffs, appearing by their attorneys, and defendant, Joe Evans, appearing by his duly appointed, qualified and acting trustee and attorney, John M.cAnally, on September 3, 1926, and at the regular 1926 term thereof, requested that this cause be taken up for disposition, and said court finding that no judgment was ever entered upon the verdict theretofore returned, ordered and adjudged that "defendant, Joe Evans is the owner of the fee simple title by adverse possession, of in and to the following described land located in Dunklin County, Missouri, to-wit: Beginning 20 chains east of the southeast corner of the Southwest Quarter of Section Thirteen (13), Township Eighteen (18), Range Nine (9) running thence east 5 chains, thence north 20 chains west to west boundary of Lot number Two (2) of the Southeast Quarter of said Section Range Nine (9), thence southeasterly direction along the boundary between said Lot No. Two (2), and Southwest Fractional Quarter of Southeast Quarter of said section to beginning point containing about 14 acres, more or less, and that plaintiffs have no estate or interest therein, and that defendant recover his costs in this behalf expended, and that execution issue therefor."

On August 9, 1929, counsel for plaintiffs, joined by John Mc-Anally as attorney and trustee for Joe Evans, respondent, filed motion "for permission to print additional abstract of record, supplementing abstract of record now on file in Supreme Court in old case No. 24040, decided July 28, 1924, as and for the record in the above cause now pending in this court, and for permission to print supplemental brief for use in connection with briefs now on file in Supreme Court in old case No. 24040, in presenting the appeal," which motion was sustained and permission given. Supplemental abstract was filed by appellants from which it appears that before judgment was entered as aforesaid, said court entertained a motion in said cause reciting that defendant, Joe Evans, was, on the —————— day of ——————, 1924, convicted of murder in the second degree in the Circuit Court of Dunklin County, Missouri, and his punishment assessed at a term of fifteen years in the Missouri State Penitentiary; that his sentence was affirmed by the Supreme Court of Missouri; that he is now serving said term in said penitentiary; that under the laws of this State said cause cannot be properly and finally disposed of until a trustee is appointed to take charge of whatever property, personal or real, the said Joe Evans may own, including his claim to the property involved in this suit, and to defend and protect the interest of the said Joe Evans in said property, if any, to the end that his property interests may be preserved, protected and defended as required by law; and requesting the court to appoint a proper and suitable person as such trustee. Thereupon the court appointed John A. McAnally as such trustee, who filed bond, which was approved by the court. Counsel for appellants have filed supplemental brief, but no brief has been filed in respondent's behalf, either in the old case or in this appeal.

Among the errors complained of in plaintiffs' motion for a new trial and urged by their counsel on this appeal is the action of the trial court in refusing to give their instruction numbered 1, requesting a directed verdict at the close of all the evidence. We shall consider this assignment first.

Plaintiff proved their record title, which included patent from Dunklin County, Missouri, issued and recorded in 1888, to the land described in their petition, showed payment of taxes, both general and special, by them for more than ten years prior to the suit, and their agents and representatives in charge testified that they had no knowledge of defendant's occupancy or claim of title to any part of the land until two or three years before this suit was filed. Defendant asserted title to none of the land except the fourteen acres, more or less, described by metes and bounds in his answer, and his only claim of title to that was under and by virtue of the ten-year Statute of Limitations. The burden, therefore, was upon him to prove such a

title, that is, show that he had been in open, notorious and continuous possession of the land under claim of ownership, for ten consecutive years prior to June 7, 1920, the date of the commencement of this suit. [Heckescher v. Cooper, 203 Mo. 278, 101 S. W. 658; Hunnewell v. Adams, 153 Mo. 440, 444, 55 S. W. 95; Hunnewell v. Burchett, 152 Mo. 611, 54 S. W. 487.] If there was any competent evidence adduced that his possession had all these characteristics plaintiffs' instruction for a directed verdict in their favor was properly denied. Otherwise, it should have been given.

Attending to the evidence, we find that defendant testified that while a minor he and his father and mother began living on this place in February or March, 1908; that they occupied a two-room tent, one room being boarded up part of the way and the other boxed, which was there when they came; that only about an acre of ground was then cleared; that it was fenced and he thought there was a garden; that it was just in the woods; that he lived there with his father and mother about a year and then married, while still a minor, and they all continued to live there until he got a patent from Dunklin County, dated December 29, 1910, for the fourteen acres, more or less, described in his answer, which included this acre of cleared ground; that he supposed the title was in the county and he obtained it by paying the county $1.25 an acre and getting the patent; that he commenced to clear the land after he got this patent, clearing and cultivating a little more ground every year until at the time of the trial six or seven acres of the land had been cleared; that he built a house two or three years after he went there, after he got his patent from the county, and then started making his improvements.

It further appears from defendant's evidence that a fisherman named Henry Kimbrow lived in the tent a year or two before defendant came there with his father and mother. There is no evidence that Kimbrow had or ever claimed to have any title whatever to any of the land in question. Defendant claimed to have "bought possession" of Kimbrow for about forty dollars, and Kimbrow thereupon moved out and defendant moved in with his parents. Defendant claimed that this transaction was evidenced by a contract in writing which Kimbrow delivered to him. This "contract" was never produced in court, although in spite of promptings of counsel to the contrary he insisted at first that he had it. Finally, he said that he could not read or write and had been unable to find the contract, but had caused no one else to look for it. In the face of this inadequate showing of diligence to discover and produce the contract, over the objections of plaintiffs, he was permitted to testify generally, as to what he "bought" of Kimbrow, obviously commingling his claims and possession thereunder with his claims and possession under the patent

acquired December 29, 1910. We quote as follows from his testimony:

"Q. How much did you have before you got the patent? A. I had about an acre that I lived on.

"Q. You claim under your contract you just got where your house was and that acre? A. I claimed all of it; I bought it later.

"Q. Let's talk about the time you say you got your contract. I'm not talking about the time you got the patent; what did you claim when you got this contract you are talking about? A. I claimed the place I bought from Kimbrow.

"Q. How much was it? A. There was about an acre cleared.

"Q. I'm trying to find out what you bought from Kimbrow? A. I'm telling you what I bought, this land I live on.

"Q. That is the acre and the house? A. Yes sir, part of it.

"Q. Do you claim you bought the whole fourteen acres from Kimbrow? A. No sir.

"Q. How much of the fourteen acres? A. There was about one acre cleared when I went there.

"Q. Where did you get the rest of it? A. I got it in 1908.

"Q. Who from? A. From the county.

"Q. Now, wasn't that in 1910? A. No sir, I don't think so.

"Q. You can't read? A. No sir.

"Q. Would you know a figure if I would show it to you? A. Yes, sir.

"Q. Would you know a naught if I showed you one? A. Yes sir, I would know that.

"Q. Now this is your patent. What is that, isn't that a naught? A. Yes sir.

"Q. That is 1910, isn't it? A. Yes sir.

"Q. That's the 29th day of December, 1910. That is when you claim you got everything except the acre you had already bought, you bought the other thirteen acres then in 1910, 29th day of December, that is when you got the patent? A. 1910. . . .

"Q. What did you buy from Kimbrow? A. I bought the possession and what there was there.

"Q. You bought this house and possession of that land, is that it? A. Yes sir.

"Q. But you didn't buy the title, did you? A. No, sir.

"Q. Who had the title? A. The county did I suppose, that's where I got the patent.

"Q. Then you bought the title to this land you claim, from Dunklin County, is that right? A. That's all.

"Q. How much did you claim to buy then from Mr. Kimbrow? A. I claimed to have bought what he had there cleared, the house place, about an acre.

"Q. Was you supposed to be buying the balance of the fourteen acres at that time too? A. No sir, later.

"MR. PANKEY: We object to that question because he stated directly and emphatically what he bought, and he is the defendant.

"THE COURT: It is leading.

"Q. Joe, at the time you moved there, did you take possession of the whole tract, fourteen acres? A. Yes sir.

"MR. PANKEY: We object to that question as leading.

"THE COURT: He will have to tell what he did, and the jury will decide that.

"Q. How much did you take possession of when you went there? A. I took possession of all there was there, plumb out to the ditch and fenced it as quick as I could.

"Q. Was that the fourteen acres? A. Yes, sir.

"Q. Did you cut any timber on any part of this? A. Yes sir."

The "possession" last above mentioned evidently refers to a time after he obtained the county patent, because elsewhere he testified that the ditch was not constructed when he first went on the place, that it was put through about the year 1912 and was there when he had the land surveyed at the time he got the county patent or thereafter. Also, note the following questions and answers:

"Q. What did you understand you were getting when the county gave you this piece of paper?

"MR. BILLINGS: I object to that as repetition.

"THE COURT: Overruled.

"MR. BILLINGS: We except.

"Q. I just want to know what you thought you were getting? A. I was getting this land.

"Q. You were getting title to the fourteen acres, weren't you? A. Yes, sir.

"Q. Up to that time what did you have? A. I just had the house place there, about an acre.

"Q. This acre is included in there too, is it not? A. Yes sir.

"Q. You didn't have the title to any of it, did you? A. I had the contract.

"Q. From him for the possession of the house? A. Yes, sir, and the land.

"Q. This thing here is when you bought your title? A. Yes sir, that is the land.

"Q. That is when you started making your improvements? A. Yes sir.

"Q. And you built your house after you got title to it? A. Yes, sir.

"Q. That's all."

Other witnesses testified in defendant's behalf, but failed to show adverse possession by him prior to date of his county patent. There

is no showing that the alleged contract from Kimbrow described any land whatever, and defendant not only testified that he thought title to all the land was in the county, but admitted that he applied for and obtained a patent from the county to all the land he now claims to own. It seems clear from all the evidence, construed most favorably to defendant, that he was never in actual possession of more than about an acre of land, and that not described or located either in the pleadings or evidence, prior to the date of the county patent, and that whatever he then had was not held under any claim of title from Kimbrow or title in himself, but on the assumption and under the belief that title to all the land rested in Dunklin County. Possession so held, be it little or much, to the time the county patent was issued was not adverse within the meaning of the Statute of Limitations. [Missouri Lumber & Mining Co. v. Chronister, 259 S. W. (Mo. Sup.) 1042, 1044.] Inasmuch as less than ten years had elapsed from December 29, 1910, the date of defendant's invalid county patent, to June 7, 1920, the date when plaintiffs commenced this suit, the ten year Statute of Limitations had not run in defendant's favor. Plaintiffs, therefore, were entitled to a directed verdict. Having reached this conclusion it becomes unnecessary to consider other assignments of error.

The judgment is reversed and the cause is remanded with direction to enter judgment for plaintiffs as prayed. All concur.