FREDERICK WALTER HANSEN, Appellant, v. MICHAEL O'MALLEY ET AL.—No. 40165.—204 S. W. (2d) 281.

Division Two, July 14, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, September 8, 1947.

*Frank W. Tomasso* and *Montague Punch* for appellant.

910

*Wm. L. Mason, Jr.*, for respondents.

BARRETT, C.—Frederick Walter Hansen instituted this action to quiet the title to 6700 Schofield Place in St. Louis County.

Upon this appeal he urges that he established title by adverse posses-sion and that, therefore, the trial court erred in finding against him.

According to the plaintiff's evidence, by warranty deed, the legal title to the property was in "John O'Malley and Mary O'Malley, his wife" and had been since April 26th, 1900. Mary O'Malley, John Sr's. wife died in 1918. On June 4, 1919, the plaintiff, Hansen, married the O'Malleys' daughter, Mary. She was then living in her parents' home at 6700 Schofield. On the day of their marriage the plaintiff moved into the home with his bride and they and their fam-ily lived there until their children were grown and until his wife, Mary, died on January 7th, 1945. Her father, John O'Malley, Sr., died in 1940. According to the defendants' answer, and the re-cord, the plaintiff, Hansen, has continued in possession of the premises since his wife's death in 1945. Three of the defendants are the plain-tiff's two children, Rose Marie and John Emanuel, and John's wife, Virginia. The other defendants are John Sr. and Mary O'Malley's surviving children, Michael and John Jr. and John's wife.

The plaintiff contends that since he and his wife and family lived in the property openly, continuously and without objection from any-one from 1919 to the present that they acquired title to the property by adverse possession and that title vested in him upon his wife's death. In further support of his claim the plaintiff offered evidence which permits the inference that he had paid the taxes on the property since 1919 and that he had made improvements on the property dur-ing that time of the value of $3,000, even though the present value of the property is approximately $2,500. When his wife's mother died in 1918 she left a will in which she gave each of her sons, John and Michael, one dollar and the residue of her estate to her daughter, the plaintiff's wife, Mary. From this fact and from a letter the father wrote to Mary, before she married the plaintiff, it is urged that it was their "will and desire" that their daughter have the property as her own. The letter, dated April 16th, 1919, was written from Milwaukee. In part it said:

"To my dear daughter Mary: With pleasure I seat myself to write you these fue lines to let you know that I received your let-ter; am awful sorry to hear of your troubles, do the best you can, you will come out all write in the end, have him examined by a doctor, he is shurley crasey to act like he is, get read of him, he is no good to you, that is your home, do what ever you want to, doant let him put your friend out, stick to your friend, he is good fello, tell him not to mind your brother, that he is crasey, doant put your marriage off to sadsfie your crasey brother."

The plaintiff proved by his children that throughout their lives, one is twenty-two and the other twenty-one, they had lived at 6700 Scho-field and they and their neighbors and friends considered the proper-ty as being their home. His friends and neighbors, throughout the

twenty-seven years, from 1919 until the trial, knew the premises as the Hansens'. However, the plaintiff testified that he never told anyone, his neighbors or his wife's relatives, that he and his wife owned the property. His position, in conclusion, was: "When I started paying taxes for about fifteen or twenty years or more, then I kind of thought I had—you may not say the owner, but I figured that it was time to find who was going to have the title to this place, and that is what I thought."

The plaintiff points to his and his wife's occupancy of the premises, without objection for twenty-seven years, to the payment of the taxes, the making of the improvements and, under all the detailed circumstances, urges that he has established title in himself and his wife by adverse possession. Occupancy of the premises, the payment of taxes and the making of improvements are circumstances favorable to the plaintiff's cause (Jamison v. Wells (Mo.), 7 S. W. (2d) 347; Woodside v. Durham, 317 Mo. 15, 295 S. W. 772; Draper v. Shoot, 25 Mo. 197) but they do not in and of themselves establish title by adverse possession. In short, it may be assumed for the purposes of this opinion that the plaintiff's evidence, except for one circumstance, meets all the requirements of title by adverse possession—a doubtful supposition. But that circumstance is decisive against his claim.

As we have said, he proved that title to the land was in his wife's mother and father, as tenants by the entirety, in 1900, and from 1918 to 1940 in her father. Consequently Mary's possession of the premises, presumably, as between herself and her father, was permissive or amicable and there being no assertion in the meanwhile of a hostile title or claim, brought to the attention of the father, other than the payment of taxes and the making of improvements, ██ her possession was not adverse in the sense required to establish title by adverse possession. McClanahan v. McClanahan, 258 Mo. 579, 167 S. W. 991; Eaton v. Cates (Mo.), 175 S. W. 950; 2 C. J. S., Secs. 80, 109(b). Neither the plaintiff nor his wife, in the circumstances detailed, occupied the premises under any claim of title in themselves but upon the assumption and in the knowledge, until 1940, that the title was in the father and therefore their claims were not adverse. Arcadia Timber Co. v. Evans, 326 Mo. 549, 31 S. W. (2d) 988; 1 Am. Jur., Sec. 126, p. 864.

It is argued that possession under a parol gift, for the required statutory period, constitutes adverse possession. Auldridge v. Spraggin, 349 Mo. 858, 864, 163 S. W. (2d) 1042, 1045; Allen v. Mansfield, 108 Mo. 343, 348, 18 S. W. 901. But the letter the father wrote in April 1919, to which the plaintiff points, cannot be construed as a gift or an intention to give the property to the plaintiff or his wife even though the "friend" mentioned in the letter was the plaintiff and the "crasey brother" the respondent, Michael.

The prayer of the plaintiff's petition was that the court decree the title "divested out of said defendants; and declaring that plaintiff has the title to said real estate by limitation, by virtue of the provisions of the said Section 1684," Mo. R. S. A. The defendants, Michael and John O'Malley, Jr. and his wife filed an answer and a counterclaim. The answer, in effect, was a general denial of the plaintiff's claim and a prayer that his petition be dismissed. The counterclaim asserted that the plaintiff had deprived the defendants of their right to the possession of the premises, for which they asked damages. At the conclusion of the case the court found for the defendants on the plaintiff's claim and for the plaintiff on the defendants' counterclaim. The plaintiff contended in the trial court, by a motion to amend the judgment and in his motion for a new trial, as he does here that the court was in error in entering a general judgment and not, in any manner, ascertaining and determining the right, title and interest of the parties in the property. The intended effect of the judgment may be that the plaintiff has no title and that the defendants do but "clearly such judgment falls far short of defining and adjudging by an appropriate decree the title, estate and interest of the parties to this controversy." Armor v. Frey, 226 Mo. 646, 664, 126 S. W. 483, 487. As we understand the record all possible owners of the land are parties to this suit and their respective rights, titles and interests are easily ascertainable from the record even though the defendants did not offer any evidence. In these circumstances it would seem appropriate to finally determine this litigation. Arcadia Timber Co. v. Harris, 285 S. W. l. c. 429; Dowd v. Bond (Mo.), 199 S. W. 954; Brooks v. Roberts (Mo.), 195 S W. 1019, 1021. In any event, if the plaintiff has no right, title or interest the judgment should so find. Armor v. Frey, 226 Mo. l. c. 664, 126 S. W. l. c. 487. In this case the plaintiff does have possession and the record is not an instance of a total failure of proof of the title. Compare: Wheeler v. Reynolds Land Co., 193 Mo. 279, 91 S. W. 1050; 44 Am. Jur., Sec. 93, p. 77; 51 C. J., Sec. 245, p. 262.

In so far as the judgment finds that the plaintiff did not establish title by adverse possession it is affirmed, otherwise the judgment is reversed and the cause remanded for further proceedings consistent with this opinion. *Westhues* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. All the judges concur.