**VILLAGE OF CLIMAX SPRINGS, a Municipal Corporation, Plaintiff-Respondent,**

v.

**Jno. P. CAMP, Nancy E. Jackson, A.R. Jackson, a/k/a Alex R. Jackson, Helen M. Jackson, Roscoe A. Jackson, Imogene Jackson, Ray Ollison, Eileen Ollison, Milton C. Hockman and their unknown consorts, former consorts, heirs, devisees, donees, alienees and immediate mesne, and remote, voluntary and involuntary grantees, executors, administrators, successors and assigns and if any one of the above-named Defendants be dead, then their unknown consorts, former consorts, heirs, devisees, donees, alienees and immediate mesne, and remote, voluntary and involuntary grantees, executors, administrators, successors and assigns of said Defendants, Defendants-Appellants.**

No. 13126.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 28, 1984.

Richard E. Duggan, Sunrise Beach, for defendants-appellants.

William Icenogle, Icenogle & Icenogle, Camdenton, for plaintiff-respondent.

HOGAN, Presiding Judge.

This is the second appeal in an action wherein the Village of Climax Springs (the city) sought to quiet the title to a small tract of realty particularly described as:

"All that parcel of land designated as 'City Spring Park' on the plat of Climax Springs, Missouri, filed in Plat Book 1,

Page 14, Records of Camden County, Missouri."

When the cause first came before the trial court, that court granted summary judgment against the plaintiff because the city collected taxes on the tract in question from 1965 through 1978. On appeal this court reversed and remanded, holding that the assessment and collection of taxes on the property did not estop the city from claiming title to it. *Village of Climax Springs v. Camp,* 609 S.W.2d 733, 734[1] (Mo.App.1980). On remand, the trial court entered judgment for the plaintiff. Defendants Ollison now appeal.

The case was very informally tried, there are some inevitable loose ends, but the record is sufficient for us to resolve the appeal on its merits. The plaintiff offered and the trial court received a plat of the Village of Climax Springs. The plat recites on its face that it is a plat of the original town and the eastern and western additions thereto. The legends across the bottom of the plat suggest it may originally have been filed in 1895, but the writing in the lower right corner of the instrument reads: "Located in Sec. 30, Tp. 39 Rg. 19 Filed For Record Jan. 4, 1915 1. P.M. W.O. Estler Recorder, F.A. Henderson, Deputy."[1] The plat is not acknowledged as required by § 445.030, RSMo 1978.[2] The plat was received without objection as to its authenticity. The plaintiff city also had evidence that the park had not been under fence during the past 42 years except for "maybe two years" preceding the filing of the action. Plaintiff then rested.

Defendant Ray Ollison testified that he had lived at Climax Springs for 59 years. He had been familiar with the tract in issue "all of [his] life" because his parents lived on an adjoining plot. Mr. Ollison identified defendant's Exhibit A, a copy of a quit-claim deed executed by J.P. Camp on May 27, 1904. This instrument purports to con-

---

1. The transcript shows that the trial court read the date of the second filing, or "refiling" as January 4th *1950* at *1 a.m.* We are convinced this recital constitutes either inadvertence or transcriptional error.

2. References to statutes and rules are to RSMo 1978 and Missouri Rules of Court (13th ed. 1982), except where otherwise noted.

vey the following tract to Nancy E. Jackson:

"South East quarter of the South West quarter of Section (19). East half of Northwest quarter all that half of the North East quarter (¼) of Section (30) not conveyed as town Lots also the Reservations shown on plat of the Town of Climax Springs as Parks is conveyed in this Deed, also North half of the North East quarter (¼) of the South East quarter (¼) of Sec. (30) and the S.W. qr. of the N.W. qr. and the N ½ of the N.W. qr. of the S.W. qr. of Sec. (29) all in Township 39 of Range 19, containing about 300 Acres More or Less, *This conveyance is made in Lieu of a former deed to Same Party which has been Lost and no record of same.*" (Our emphasis.)

This deed was acknowledged in the city of St. Louis on September 1, 1904, and was filed for record on April 24, 1905, in Camden County.

Defendant Ollison also identified defendants' Exhibit B, a Collector's Deed executed September 28, 1961, which recites that Alex R. and Helen Jackson purchased Climax Springs Park in the city of Climax Springs, Missouri, on August 24, 1961, for $53.00, that amount being the taxes assessed but delinquent on the parcel described for the years 1954, 1955, 1956, 1957 and 1958. The deed also recites on its face that the taxes were assessed in the name of Lydia E. Vantoyl.

Mr. Ollison also identified defendants' Exhibit C, a quitclaim deed executed June 19, 1964, from Alex R. Jackson and Helen Jackson, conveying the parcel in issue to defendant Ollison and Eileen Ollison, his wife. This deed was filed for record July 8, 1964, in Camden County.

Mr. Ollison further testified that at trial time, he had some horses running on the property in issue. Ollison fenced the property about 2 years before trial. When he bought the property in 1964, he drove posts around the property, but did not put up the fence and the posts rotted off. Six or seven years before trial time, Mr. Ollison moved a trailer house on the tract involved, installed a septic tank and lived on the property while he was building his parents a new home. According to Ollison, there was a stave mill on the property "back in the 30's."

On cross-examination, Mr. Ollison could recall no recent public activity or function in the park. "[T]hirty-five, forty years ago," according to this defendant, some outdoor church meetings were held in the park "[f]or ... a week or a few days." A concrete structure had been built around the spring in the park, but Mr. Ollison had the opinion this concrete structure was built before he was born.

In rebuttal, the city had the evidence of Mrs. Lannie Flippen, a resident of Climax Springs for 71 years. Mrs. Flippen was familiar with the city park. In the "50's," Mrs. Flippen and her husband had hauled water from the park; " ... it was a dry time and [the] ponds went dry." Mrs. Flippen also recalled revival meetings in the park, meetings "where you had preachin' and singin' and prayin' and testifyin', and people got saved ...." This witness also produced small photographs of the realty at issue when it was being used as a public park in 1936. She also recalled attending a carnival in the park about 1930 and further described the concrete structure around the spring. The plaintiff had other testimony that as late as "the early 50's" the park was being used as such.

Apparently, the trial court examined an abstract and found Mr. Camp to be a stranger to defendants Ollisons' title, except for the deed already noted. Further, the deposition of Mr. A.R. Jackson was read in evidence, but we do not have the deposition before us. Even so, as we have already noted, the record is sufficient to resolve the meritorious questions raised in this court.

The appellant defendants have briefed two assignments of error. They contend that the city park was never dedicated to public use, because a) the city failed to comply with the statute pertaining to dedications; b) there was never any common-

law dedication nor any acceptance by the respondent city, and c) even if there were a dedication, that dedication was revoked by the dedicator prior to acceptance by the city. The respondent answers by saying that: a) there was a proper statutory dedication of the park; b) if the plat did not meet the requirements of the statute, there was a valid common-law dedication, and c) there was no evidence that the dedicator revoked the dedication before it was accepted, if acceptance is required.

■ It is not clear from the record when the plat was originally filed. There is some indication on the face of the plat that it was filed October 28, 1895; however, it is clearly shown by the face of the instrument that it was "filed for record" January 4, 1915. We are, at the outset, remitted to general principles, and the principle which controls here is that the intention of the owner to set apart the land for the use of the public is the foundation of every dedication; that intention may be manifested in a subdivision plat filed in attempted compliance with the statutes: *State ex rel. State Highway Commission v. Public Water Supply District No. 2 of Jefferson County*, 559 S.W.2d 538, 541[6] (Mo.App.1977); *City of St. Charles v. De Sherlia*, 308 S.W.2d 456, 465 (Mo.App. 1957). The intent to dedicate is amply manifested by the owners in this case, whoever they were. The plat was filed not once, but twice. In view of the curative statute, § 445.060, it is now of no consequence that the plat was not fully made, certified or executed or that it was not properly or fully acknowledged according to law at the time it was made and executed. The lapse of time has operated to cure any defective execution present in this case.

■ Neither is it of dispositive significance that no immediate user by the public was shown. We know judicially that the Village of Climax Springs was not incorporated as such until 1931. Therefore, the county of Camden was vested with title to the ground platted as a public park at the time the land was dedicated, and when the

Village of Climax Springs was incorporated, the public park became a part of Climax Springs in the absence of evidence that the park was rejected as part of the incorporated village. Further, user by the public after the village was incorporated constituted acceptance; a formal resolution accepting the dedication was unnecessary. Section 445.070.3; *Weakley v. State Highway Commission*, 364 S.W.2d 608, 612[5–7] (Mo.1963); *Bates v. Mueller*, 413 S.W.2d 853, 855[3][4] (Mo.App.1967). There was, if nothing else, an effective common-law dedication of the city park.

■ One of the appellant defendants' two trial theories was that the dedicator revoked his dedication by the quitclaim deed of 1904, the substance of which has been set out. The fatal flaw and weakness in this argument is that a quitclaim deed does not import that the grantor has any interest at all. *Reasor v. Marshall*, 359 Mo. 130, 140, 221 S.W.2d 111, 115 (1949). Moreover, the quitclaim recites that it has been executed in lieu of a lost deed "and no record of same." The defendants were therefore in the position of relying on a lost instrument to establish that Camp's quitclaim was efficient to revoke the dedication before it became effective. Perhaps there are circumstances which, if shown, will raise a presumption of the execution of a lost deed, but the defendant in a quiet title action who relies on a lost instrument has the burden to establish its execution, and there are no facts in this record upon which to predicate such a presumption. See, generally, *Brooks v. Roberts*, 281 Mo. 551, 561–562, 220 S.W. 11, 14[8][9, 10] (1920). Defendants' proof of title through a chain of conveyances beginning with the quitclaim from Camp to Nancy E. Jackson fails to establish that they have any right, title or interest in the property as against the plaintiff city, and the trial court properly so determined. If what we have said does not answer defendants' first point directly, it is sufficient to show that point to be without merit.

■ The defendants' other point is that the evidence shows an abandonment of the

city's easement. They again insist that the city's collection of taxes unequivocally points to such an abandonment, but upon examination it will be seen that this argument is inherently contradictory. If the dedication was so defective as to have no legal force or effect, as defendants now claim, an assessment of taxes against the land described according to the plat would have been invalid, as would the sale for delinquency. *State ex rel. and to Use of Jennings v. Hamilton*, 293 S.W. 378, 379[1][2] (Mo.1927).

But if the dedication was valid, as we have held, then the assessment and collection of taxes on the tract in issue does not of itself constitute an abandonment nor prohibit the plaintiff from claiming it. *Village of Climax Springs v. Camp*, 609 S.W.2d at 734. Otherwise, defendants' proof of abandonment is not as impressive as their counsel maintains. Generally, land dedicated to a particular public use cannot be diverted to another use. *Kirkwood v. City of St. Louis*, 351 S.W.2d 781, 784 (Mo.1961). This case does not require consideration of the same factors as does a case involving a public way. Very little expense or improvement is involved in maintaining a public park to a degree sufficient to avoid abandonment of the city's easement. If a tract of land is suitable as a pasture for horses, we daresay it is suitable for use as a public park. In the final analysis, the question of abandonment vel non was a question of fact for resolution by the trial court. The public would not lose its interest merely by neglect or failure to care for the park. *City of Fairfield v. Jemison*, 283 Ala. 462, 218 So.2d 273, 275[2] (1969); 23 Am.Jur.2d Dedication § 67, p. 57 (1983). When we review a bench-tried case, our authority to reverse upon the ground that the judgment or decree is against the weight of the evidence is limited to those instances in which review of the whole record creates a firm belief that the judgment or decree is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). We entertain no such belief here.

While we cordially agree with the trial court's conclusion that title to the city park is vested in the plaintiff, we find it necessary to reverse and remand the cause. It is well established that in a quiet title action all persons properly made parties are entitled to have their respective titles affirmatively adjudged and declared. *Harrington v. Muzzy*, 258 S.W.2d 637, 638[1] (Mo.1953); *Hansen v. O'Malley*, 356 Mo. 908, 913, 204 S.W.2d 281, 283[4, 5] (1947); *McComas v. Umlauf*, 641 S.W.2d 809, 812 (Mo.App.1982). In this case, the trial court apparently adopted a form of decree prepared by the plaintiff city which purports to vest the plaintiff with the fee simple title to the park. The record shows that title to the realty in dispute vested in the city by dedication, not by grant, and plaintiff acquired only an easement for public purposes subject to reversion. *Land Clearance for Redevelopment Authority of the City of St. Joseph v. City of St. Joseph*, 560 S.W.2d 285, 287 (Mo.App. 1977). Further, other defendants were apparently served, although no proof of service appears in our record. Moreover, there may be some degree of ambiguity in the description of the premises, inasmuch as the plat before us indicates there are two parks, both of which have or have had, springs in them. These minor difficulties with the decree can doubtless be easily resolved by the trial court, but we consider it to be our duty to reverse and remand the cause for revision and possible correction of the decree. See *Rubinstein v. Rubinstein*, 283 S.W.2d 603, 608–609[11] (Mo. 1955). Accordingly, the decree is reversed and the cause is remanded.

MAUS, PREWITT and CROW, JJ., concur.